Raymond G. **RILES**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 54101.

Court of Criminal Appeals of Texas.

Oct. 26, 1977.

State's Motion for Rehearing Denied Nov. 9, 1977.

Calvin A. Hartmann, Houston, on appeal only, for appellant.

Carol S. Vance, Dist. Atty., James C. Brough and Stu Stewart, Asst. Dist. Attys., Houston, Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This appeal is taken from a conviction for the offense of capital murder. See V.T.C.A., Penal Code, § 19.03. Punishment was assessed at death following the jury's affirmative answers to certain questions. See Article 37.071, Vernon's Ann.C.C.P.

We are met at the outset with appellant's initial contention that the court reversibly erred in admitting evidence of extraneous offenses which occurred about forty minutes after the alleged offense.

In order to properly address appellant's contention, a brief recitation of the facts is necessary. William Thomason testified he was the lot manager for John Henry Motors at 8506 Irvington Boulevard in Houston. On December 9, 1974 about 5:30 p. m. Ozella Grant and Herbert Washington tried out a 1966 Mustang automobile. They were accompanied by the appellant Riles and a small child. Thomason reduced the price of the Mustang because of things the prospective buyers said were wrong with the car. Washington paid $149.00 as down payment on the sale price of $695.00, jointly purchasing it with Grant. The deceased, John Henry, was not present during the transaction.

On December 11, 1974, Washington drove the Mustang onto the lot. He was accompanied by appellant Riles, who drove another vehicle, a blue Ford. Washington complained to Thomason the Mustang was not operating properly and demanded the return of his down payment. Thomason conferred with Washington and the appellant for fifteen or twenty minutes, advising that the down payment could not be refunded but that he would attempt to have the car repaired. Otherwise he advised they would have to see John Henry, the owner. Washington and appellant left in the blue Ford, but returned a short time thereafter. Henry was on the telephone, but upon finishing the conversation in the inner office, came into the outer office where Thomason explained the situation to him. Henry then told Washington he could not refund the down payment, but he would try to repair the car.

Appellant stated it was a "rip off" and demanded the down payment. Henry asked the appellant to stay out of the conversation so he could "work it out" with Washington. Appellant pushed Henry, who fell backwards. The appellant and Washington both then pulled guns. When Henry attempted to get out the office door, appellant yelled for him to "get back" in here and then shot Henry and followed Henry

out of the door. Inside the office Washington hit Thomason across the mouth with his gun and knocked him against the wall. He demanded and got the papers relating to the sale of the Mustang and then took $43.00 of Thomason's own money.

Frank Glenn, a porter at the lot, saw the appellant follow Henry out of the office after the shot was fired. He observed appellant was straddling Henry, with his gun in Henry's face. After appellant demanded money, Henry gave him a folded roll of bills. Appellant yelled, "Come on, I've got the money." Washington came out of the office and kicked at Henry but missed. The appellant kicked Henry and both men then fled in a blue Ford. It was about 11:50 a. m.

Then, over objection, Nelson Noak, division manager of Herby's Foods at 6506 Gulf Freeway, testified that at 12:30 p. m. on December 11, 1974 appellant and Washington entered his store and asked for employment. He explained there were no openings, but appellant asked to fill out forms. When Noak stated it was useless, appellant stated it was a "stick up" and demanded money. Appellant and Washington both displayed guns and took $411.00 from Noak, $135.00 to $150.00 from Noak's wife and a bag from Herby's Foods containing $1,300.00. Money was also taken from one Nick Costa.

Shirley Noak's testimony was much the same as that of her husband's.

About 1:30 p. m. on December 11, 1974 Officers D. C. Wells and J. B. Robbins of the Criminal Intelligence Division, Houston Police Department, were on patrol in mufti when they observed the appellant and Washington in a blue Ford. They were not aware of the above described offenses. Wells noted the holes in the Ford's rear license plates did not match, that the men in the Ford wore gloves and that the passenger Washington was "active." As the officers followed the Ford, Washington became more active and the Ford began to speed, and a chase with speeds up to 100 miles per hour ensued.

At the intersection of South Park and Griggs appellant's car ran a red light and collided with a truck. Appellant and Washington ran from the Ford with appellant carrying a gun and Washington carrying what appeared to be a bank bag. Appellant threw a gun to Washington as they fled, and they exchanged gunfire with the officers who were twenty-five feet away. Appellant fired three deliberate shots at the officers. Washington was wounded in the hand, dropped his bag and pistol and fell to the ground. Appellant was also wounded but escaped. A bag having Herby's Food Market imprinted on it was found when Washington was arrested.

Earnest Boyd, Jr., who had just arrived home from work as a security guard early in the afternoon on December 11, 1974, heard his front door open. He then observed appellant in a living room chair bleeding from his right arm. The appellant displayed a pistol and demanded assistance. After a brief struggle, Boyd took appellant's gun and subdued him. Following a trail of blood, Officer Robbins entered the Boyd house and found the appellant had been subdued.

Dr. Joseph Jachimczyk, Harris County Medical Examiner, testified that the cause of death of John Henry, the deceased, was a gunshot wound with the bullet entering the deceased's back and proceeding into his head. Dr. Jachimczyk testified a person sustaining such a wound might not be aware of such wound until pressure from hemorrhaging built up in the brain.

Neither the appellant nor Washington testified. The only witness called by the defense was Houston Police Officer John Evans, who related that at 11:50 a. m. on December 11, 1974, while on patrol, he saw a scuffle at the John Henry Motors lot. He saw Henry fall to the ground and saw a man kick him. Someone rushed to his vehicle and told him "to catch the blue Ford" as they were "the ones." The officer pursued the blue Ford but lost it in the noon day traffic. He was unaware at the time of what had occurred.

Under his first ground of error it is apparent from the argument that appellant is complaining of the admission of the testimony concerning the extraneous offenses involving the robberies of Nelson Noak, Shirley Noak and Nick Costa at Herby's Foods, a wholesale company on the Gulf Freeway in Houston, which occurred some distance away and some forty minutes or so after the alleged offense of capital murder.

"The general rule in all English speaking jurisdictions is that an accused is entitled to be tried on the accusation made in the State's pleading and not on some collateral crime, or for being a criminal generally. The rule is now deemed axiomatic and is followed in all jurisdictions." *Young v. State,* 159 Tex.Cr.R. 164, 261 S.W.2d 836 (1953). See also *Rodriguez v. State,* 486 S.W.2d 355 (Tex.Cr.App.1972); *Jones v. State,* 481 S.W.2d 900 (Tex.Cr. App.1972); *Jones v. State,* 479 S.W.2d 307 (Tex.Cr.App.1972); *Chandler v. State,* 417 S.W.2d 68 (Tex.Cr.App.1967); 23 Tex. Jur.2d, Evidence, § 194, p. 294.

There are, of course, exceptions to this general rule as were discussed in *Albrecht v. State,* 486 S.W.2d 97 (Tex.Cr.App.1972), but the exceptions there discussed are not exclusive as the opinion noted. See also 23 Tex.Jur.2d, Evidence, § 195, p. 300.

In the instant case the State advised the court it intended to offer the extraneous offenses occurring at Herby's Foods on the theory of flight. Out of the jury's presence Houston Police Officer White testified he had learned Washington and Ozella Grant had rented an apartment on South Park Avenue in Houston on December 9th and that appellant had spent the night there before the alleged offense. Despite the location of Herby's Foods, the State offered the argument that the appellant and Washington were fleeing to such apartment from the scene of the alleged offense but attracted the attention of Officers Wells and Robbins which resulted in their eventual arrest. They never reached the apartment in question. Officer White's testimony was not offered before the jury, but the trial court stated it would admit evidence of the extraneous offense on the theory of flight. Later the court, at the guilt stage of the trial, gave a limiting charge on the extraneous offenses limiting the jury's consideration of the extraneous offenses to the issue of intent.

On appeal the State urges the extraneous offenses occurring at Herby's Foods store were admissible on the theory of flight and admissibility was further justified on the issue of intent. The State argues that in making its case of capital murder as alleged it must not only prove the intent to kill but the intent to commit robbery as the indictment alleged the murder occurred during the course of a robbery.

In *Rogers v. State,* 484 S.W.2d 708 (Tex. Cr.App.1972), a robbery conviction was reversed because of the admission of the extraneous robbery offense occurring a few blocks from the robbery charged. There the court quoted from *Jones v. State,* 481 S.W.2d 900 (Tex.Cr.App.1972):

"True, flight is a circumstance from which an inference of guilt may be drawn. E. g. *Ysasaga v. State,* 444 S.W.2d 305; *Crenshaw v. State,* Tex.Cr. App., 389 S.W.2d 676. Still, *flight should show some act or instance of running away.* The fact that appellant was in Houston within a seven day period of time does not indicate flight. *There must be some circumstance to show that the accused is moving out or running.* E. g. *Woods v. State,* 480 S.W.2d 664; *Israel v. State,* 158 Tex.Cr.R. 574, 258 S.W.2d 82." (Emphasis added.)

Then the *Rogers* opinion added:

"In the instant case, the record reflects that the extraneous offense occurred within a few blocks of the primary offense. Clearly, flight is not shown.

"We find no issue of identity, intent, or motive raised by the evidence which would permit the introduction of the extraneous offense. No defensive theory was raised by the appellant testifying in his behalf or by the presentation of testimony by any other witness. We conclude that reversible error was committed by the admission of the extraneous offense."

In *Hicks v. State,* 82 Tex.Cr.R. 254, 199 S.W. 487, 488 (1917), it was pointed out that the circumstances must indicate that the flight is "so connected with the offense on trial as to render it relevant as a circumstance bearing upon his guilt."

The State surmises from the evidence (offered in the absence of the jury) that the appellant and Washington were on their way to an apartment in Houston which had just recently been rented. Although they never reached there, the State argues they were in flight and evidence of the robberies at Herby's Foods was admissible. The instant offense occurred in the city of Houston. The extraneous offenses occurred about 40 minutes later some blocks away but in Houston. Appellant and Washington may well have been on their way to their apartment when they were apprehended by officers in Houston. We cannot conclude under these circumstances that flight is shown so as to justify the admission of extraneous offenses on that theory. See *Powers v. State,* 508 S.W.2d 377 (Tex.Cr. App.1974).

The State argues though the extraneous offenses were admissible on the issue of intent. In *Fentis v. State,* 528 S.W.2d 590 (Tex.Cr.App.1975), it was written:

"With regard to the admissibility of the extraneous offense, it is true that a specific intent to kill can be presumed from appellant's use of a deadly weapon, and thus intent to kill was not really in issue. *Rodriguez v. State,* 486 S.W.2d 355, 359 (Tex.Cr.App.1972). . . ."

In the instant case, the appellant used a deadly weapon in committing the alleged offense, and thus, intent to kill was not really in issue. The State recognizes this but urges that it also had to prove the intent to rob the deceased at the time and that its evidence on this issue was equivocal, thus justifying the admission of the extraneous offenses. We cannot agree that the evidence on the issue of intent to rob was equivocal. State's evidence showed that immediately after the appellant shot the deceased he followed the deceased out of the office door and was seen straddling the deceased, pointing a gun in his face and demanding money. As soon as the deceased gave the appellant a roll of bills, the appellant yelled to Washington "Come on, I've got the money." Washington was still in the office robbing Thomason at gunpoint. The foregoing evidence was undisputed, and neither the appellant nor Washington testified. *Hafti v. State,* 416 S.W.2d 824 (Tex.Cr.App.1967), made clear that if the State's testimony leaves no question as to intent or identity proof of an extraneous offense is inadmissible on the issue of intent or identity. See also *Rogers v. State,* supra. Thus, where the intent can be inferred from the act, extraneous offenses are not admissible. See *Albrecht v. State,* supra.

In the instant case the intent to commit robbery during the course of the offense of murder was clearly inferable from the acts of the appellant.

Thus, there is no issue as to intent, identity or motive raised by the evidence which would permit the introduction of the extraneous offenses. No defensive theory was raised by the evidence. The admission of the extraneous offenses was reversible error. *Rogers v. State,* supra.

The judgment is reversed and the cause is remanded.