**Robert Andrew THOMPSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 59998.**

Court of Criminal Appeals of Texas, Panel No. 1.

March 18, 1981.

Rehearing Denied July 13, 1983.

Jimmy Burrell, Hempstead, for appellant.

Oliver S. Kitzman, Dist. Atty., Hempstead, Robert Huttash, State's Atty., Austin, for the State.

Before ÓNION, P.J., and ROBERTS and ODOM, JJ.

## OPINION

ONION, Presiding Judge.

This is an appeal from a conviction for aggravated robbery, V.T.C.A., Penal Code, § 29.03(a)(2). Punishment was assessed by the jury at life imprisonment.

Although appellant does not contest the sufficiency of the evidence to support the conviction, a summary of the facts is necessary to place in perspective his single ground of error in which he complains of the admission of an extraneous offense. At approximately 9:15 p.m. on May 31, 1977, two men identified as appellant and Isiah DeLeon entered a U-Tote'M store in Sealy and robbed the manager, Lillian Pavelka, and a customer, Brian Havran, at gunpoint. After they left, Havran provided the Austin County Sheriff's Department with a description of DeLeon, appellant and the car in which they had left.

Texas Ranger Ray Scholton and Officer Bill Easterling were observing westbound traffic on Interstate 10 east of Columbus when a gold or brown Chevrolet car matching the description broadcast by the Austin County sheriff's dispatcher passed their unmarked car. Although Scholton's car was not equipped with roof-mounted red lights, he switched on the car's siren, emergency signals and high-beam headlights in an unavailing effort to curb the vehicle. During the ensuing chase, the two cars reached speeds in excess of 120 miles per hour.

Appellant and DeLeon ran a roadblock east of Weimar and left the freeway at the Weimar exit. Shots were exchanged as the cars crossed the overpass to the south side of Interstate 10 and turned east onto the frontage road. At that point a round from Scholton's shotgun disintegrated the driver's side window. The car continued moving east in the culvert south of the frontage road, finally stopping about half a mile from the overpass. The occupants then fled on foot.

Officers arriving to assist in the search patroled nearby roads and established a perimeter within which they hoped to contain the fleeing men. Dogs were brought in to track the fugitives. The gold Chevrolet displayed stolen license plates but was found to be registered in appellant's name.

The State called Herman Janacek, who lived within a mile of the location where appellant abandoned his car. Over appellant's objection, Janacek testified that appellant appeared at the Janacek's back door at about 6:30 the next morning and explained that he had had an accident or a breakdown and needed help to get to Houston. Janacek noticed that instead of shoes appellant was wearing "croaker" sacks around his feet and that he had blood around his left ear. Janacek, being aware of the manhunt, decided to call the police. He assured appellant that he was going to call for help, but after Janacek went inside appellant entered the house and drew a pistol. Janacek initially refused to let appellant take their car, but Janacek's wife persuaded him to let appellant have it so he would leave.

After appellant left, Janacek reported the incident to the police. Appellant was arrested in the Janacek's car by a Colorado County deputy sheriff between 8:00 and 8:30 a.m. near Columbus. He had Mrs. Pavelka's credit card in his possession.

Appellant took the stand in his defense, denied participating in the Sealy robbery, and testified that he had been asleep in the back seat during the commission of the robbery and the subsequent chase. He said that the black male whom the officers had seen driving was a gambling companion from Houston known to him only as "Larry." Appellant claimed he awoke as the car left the interstate and was about to raise his head when the side window exploded in a shower of glass. He said that "Larry" and DeLeon had already gone when he left the car, still unaware of the identity of his pursuers.

Appellant testified in detail on direct examination concerning the robbery of the

Janaceks. With some additions and explanations, he confirmed Janacek's testimony.

Appellant contends that the trial court erred in admitting evidence of the extraneous aggravated robbery of Janacek. We disagree.

■ As a general rule, the accused is entitled to be tried on the allegations contained in the State's pleading and not on collateral crimes or for being a criminal generally. *Young v. State*, 159 Tex.Cr.R. 164, 261 S.W.2d 836 (1953); *Albrecht v. State*, 486 S.W.2d 97 (Tex.Cr.App.1972); *Sanders v. State*, 604 S.W.2d 108 (Tex.Cr. App.1980). Nevertheless, because flight is a circumstance from which guilt may be inferred, evidence of flight is admissible even though it may show the commission of other crimes. *Whittington v. State*, 580 S.W.2d 845 (Tex.Cr.App.1979); *McWherter v. State*, 607 S.W.2d 531 (Tex.Cr.App.1980). Such evidence is also relevant "to show the efforts made to locate or apprehend the accused, his pursuit and capture, including his resistance to arrest when overtaken." *Hunter v. State*, 530 S.W.2d 573, 574 (Tex. Cr.App.1975); *McWherter*, supra.

In support of his contention that the robbery of Janacek did not occur during flight from the offense which is the subject of the instant prosecution, appellant relies upon *Rogers v. State*, 484 S.W.2d 708 (Tex.Cr. App.1972), in which we said:

"[T]he record reflects that the extraneous offense [another robbery by assault] occurred *within a few blocks of the primary offense.* Clearly, flight is not shown." (Emphasis added.) 484 S.W.2d at 711.

Appellant also cites *Riles v. State*, 557 S.W.2d 95 (Tex.Cr.App.1977), which involved an extraneous robbery committed some 40 minutes later a few blocks from the scene of the primary offense. Appellant contends that since the extraneous offense in the instant case occurred miles away from the scene of the primary offense and nine hours later, *Rogers* and *Riles* require reversal of this case.

The rationale behind *Rogers* and *Riles* can be traced to *Jones v. State*, 481 S.W.2d 900, 902 (Tex.Cr.App.1972), wherein we said:

"True, flight is a circumstance from which an inference of guilt may be drawn. e.g. *Ysasaga v. State*, [Tex.Cr. App.] 444 S.W.2d 305; *Crenshaw v. State*, Tex.Cr.App., 389 S.W.2d 676. Still, flight should show some act or instance of running away.... *There must be some circumstance to show that the accused is moving out or running.*" (Emphasis added.)

The facts in *Rogers*, supra, show that the primary offense consisted of a robbery alleged to have occurred during the evening of March 1, 1972. The extraneous offense of robbery was shown to have occurred only 10 blocks away at 1:00 the next morning. The facts in *Riles*, supra, show that the primary offense consisted of capital murder during the course of a robbery alleged to have occurred on December 11, 1974 at 11:50 a.m. The extraneous offense of robbery occurred 40 minutes later and a few blocks distant while the defendant was allegedly en route to his apartment. In neither *Rogers* nor *Riles* could it be said that the accused was consciously attempting "to escape the immediate consequences of his act," *Arivette v. State*, 513 S.W.2d 857, 862 (Tex.Cr.App.1974).

In *Woods v. State*, 480 S.W.2d 664 (Tex. Cr.App.1972), the defendant and his companions robbed the complaining witness in his Dallas apartment shortly after midnight on June 16, 1970. At about 1:30 a.m., they took an automobile at gunpoint and drove to Arizona. The majority held that the details of the extraneous offense, as well as the fact of its commission, were admissible to show flight.

■ In this case, appellant and DeLeon fled from pursuing officers at speeds of 120 miles per hour. When appellant's car was disabled, both men fled on foot. Over 100 state, county and local law enforcement officers participated in a manhunt lasting throughout the night. The barn appellant chose for refuge was only ¾ of a mile from the abandoned car, within hearing distance

of the barking dogs. When he appeared at Janacek's door the next morning, appellant had discarded his shoes for a pair of croaker sacks. The only property obtained from Janacek in the extraneous robbery was his car, which appellant used to travel approximately 16 miles before his arrest. We hold that the extraneous offense was admissible, being "part of and incidental to the appellant's attempted flight to avoid arrest." *Hunter v. State,* supra, at 575.

 Further, it is well established that the admission of improper evidence cannot be urged as grounds for reversal where the defendant gives testimony on direct examination which establishes the same facts as those to which an objection was addressed. *Cameron v. State,* 530 S.W.2d 841 (Tex.Cr. App.1975); *Palmer v. State,* 475 S.W.2d 797 (Tex.Cr.App.1972). This is what occurred in this case. Even if the admission of the Janacek robbery was error, which we conclude it was not, the testimony by the appellant on direct examination removed any question.

The flight from the offense charged was clearly admissible, and when evidence of stolen license plates being on the abandoned car of the appellant's was offered, there was no objection. Nothing is presented for review in this regard.

Appellant's ground of error is overruled.

We have examined the grounds of error contained in appellant's pro se brief and find them to be without merit.

The judgment is affirmed.