Jose Maria **AGUIRRE**, Appellant,

v.

The **STATE of Texas**, Appellee.

No. 04–83–00022–CR.

Court of Appeals of Texas,
San Antonio.

Nov. 30, 1984.

Rehearing Denied Jan. 4, 1985.

Margil Sanchez, Jr., Rio Grande City, for appellant.

Rudy Gutierrez, Hebbronville, for appellee.

Before CADENA, C.J., and CANTU and REEVES, JJ.

## OPINION

REEVES, Justice.

Appellant was convicted of murder and the jury assessed punishment at fifty years' confinement in the Texas Department of Corrections.

In his first ground of error, appellant alleges the trial court erred in denying his motion for instructed verdict because the State failed to prove venue. Appellant contends that the State failed to show that the offense occurred in the State of Texas.

The indictment charged appellant with the murder of the deceased occurring in Starr County, Texas. The State introduced into evidence through the testimony of a number of witnesses, including Chief Investigator Hilaria Saenz, Jr., Deputy Cornelio M. Garza, and Constable Gonzalo Bazan, that the homicide took place at La Casita in Starr County.

Venue is sufficiently proven if from the evidence it is shown that the offense was committed in the county alleged. TEX.CODE CRIM.PROC.ANN. art. 13.17 (Vernon 1977); *Hignite v. State*, 522 S.W.2d 210 (Tex.Crim.App.1975); and *Skelton v. State*, 626 S.W.2d 589 (Tex.App.—

Texarkana 1981, no pet.). Here the State alleged and proved the offense occurred in Starr County as required by art. 13.17, *supra*, and this court takes judicial notice of the fact that Starr County is in the State of Texas. *See Leyva v. State*, 552 S.W.2d 158 (Tex.Crim.App.1977) and *Houston v. State*, 426 S.W.2d 868 (Tex.Crim.App.1968).

The first ground of error is overruled.

The second ground of error alleges the trial court committed reversible error in permitting the prosecution to argue to the jury in the opening statement, over objection, that the State of Texas and the people of the State were asking for a verdict of guilty.

Following the reading of the indictment and appellant's plea thereto, the State made an opening argument to the jury. During the argument, the following occurred:

(The Prosecutor)

MR. RAMIREZ: Ladies and gentlemen, I'm going into the evidence that will come out. In the case-in-chief that we expect to present to you we expect to present several law enforcement officers to testify as to the investigation they conducted in regards to this shooting, then we also expect to show some expert testimony on the ballistics examination of the witnesses.

We also have expert testimony by the doctor who autopsied the body of Oscar Javier. We also expect to present one eyewitness and other lay witnesses that are involved in the case. I would ask, ladies and gentlemen, to keep in mind that we are here to arrive at the truth. We are here to do justice. Ladies and gentlemen, throughout the testimony of the different witnesses there may be different discrepancies among their testimony.

(Defense Counsel)

MR. SANCHEZ: Objection, that is outside the scope of the opening statement. I think he's limited, under the code, to present the evidence that he expects to show, whether there are

any discrepancies that's for the jury to decide.

THE COURT: The objection will be sustained.

MR. RAMIREZ: I'm going to tell you, ladies and gentlemen, that you are the sole judges, as we said, that is are the witnesses credible, who is telling the truth and who is not. I would ask you to decide that that is your role.

Finally, ladies and gentlemen, at the end of this total case that the State of Texas will ask you, ladies and gentlemen, that you bring back a guilty verdict.

(Defense Counsel)

MR. SILVA: We object to the State's opening statement to the jury in the nature of the accusation and the facts which are expected to be proved by the State and support thereafter—therefore, to limit the opening statement, that is for the jury argument. He is making a closing summation. We ask the Court to admonish counsel to stay withing [sic] the realm of the Code of Criminal Procedure.

MR. RAMIREZ: May I respond to the objection?

I stayed within the bounds of the opening statement. I can bring case law to back my statement.

MR. SILVA: What is the ruling on the objection?

THE COURT: Objection is overruled.

MR. RAMIREZ: In closing I will, that is the people of the State, ask you to bring back a guilty-verdict of Jose Maria Aguirre for the murder of Oscar Javier Lopez.

Thank you very much.

THE COURT: Will you call your first witness.

MR. RAMIREZ: The State calls Mr. Hilario Saenz.

■ Generally, any impropriety in the prosecutor's argument to the jury is waived by a defendant's failure to make a proper, clear and timely objection. *Euziere v. State*, 648 S.W.2d 700 (Tex.Crim. App.1983). Additionally, an objection raised on appeal will not be considered if it varies from the objection made at trial. *Euziere v. State, supra,* and *Seals v. State*, 634 S.W.2d 899, 909 (Tex.App.—San Antonio 1982, no pet.). An examination of the objection made by appellant reveals that it is nothing more than a general objection, insufficient to direct the trial court's attention to a specific complaint, and presents nothing for review. *Cf. Earnhart v. State*, 582 S.W.2d 444, 449 (Tex.Crim.App.1979) ("... not a proper argument, not a proper statement. We object to his making a statement like that," held too general and did not notify trial court of grounds for objection) and *De Russe v. State*, 579 S.W.2d 224, 234 (Tex. Crim.App.1979) (objection that argument is "prejudicial, outside of the record and prejudicial to defendant" too general and presented nothing for review.) The nebulous objection made by appellant at trial is clearly not the same objection as he now raises on appeal, and thus the error claimed herein on appeal is not preserved for review. *See Jackson v. State*, 516 S.W.2d 167, 174–175 (Tex.Crim.App.1974) and *Seals v. State, supra* at 909.

■ We also note that had appellant's objection to the first portion of the prosecutor's argument been proper, we fail to perceive error. The argument is similar to an argument presented at the close of the evidence in *Spencer v. State*, 466 S.W.2d 749, 754 (Tex.Crim.App.1971) wherein the prosecutor argued:

Ladies and Gentlemen, the State has proved its case. We are entitled and Dallas County is entitled to a verdict of guilty.

The court held that this amounted to a plea for a conviction. It did not mention public opinion or what the people of Dallas County wanted or expected the jury to do. *Spencer v. State, supra* at 754. This reasoning seems applicable to the instant case with regard to the prosecutor's first remark and under *Spencer v. State, supra,* no error is shown.

The second reference in the latter portion of the prosecutor's argument seems to have overstepped the subtle distinctive bounds of *Spencer v. State, supra,* by injecting what the people of this State wanted the jury to do. As the record reflects, this occurred right before the State called its first witness and appellant made no objection to the argument. As was previously mentioned, any impropriety in the State's argument is waived by a defendant's failure to make a proper and timely objection. *Euziere v. State, supra.* An exception to this general rule occurs where the argument of the prosecutor is so prejudicial that an instruction to disregard will not cure the harm. *Romo v. State,* 631 S.W.2d 504 (Tex.Crim.App.1982). Specifically noting this argument was made prior to any evidence being presented in the case, we believe that any error therein was not so prejudicial that it could not have been cured by an instruction by the trial court. For this reason, appellant's failure to object waived any error. *See Curtis v. State,* 640 S.W.2d 615 (Tex.Crim.App.1982) and *Mahan v. State,* 586 S.W.2d 488 (Tex. Crim.App.1979).

The second ground of error is overruled.

The third ground of error alleges the trial court erred in permitting the State to present testimony of an oral statement allegedly made by appellant while in custody in contravention of TEX.CODE CRIM. PROC.ANN. art. 38.22 (Vernon 1979).

Deputy Sheriff Cornelio M. Garza testified that while conducting his investigation at the scene of the offense, he was contacted by the Sheriff's dispatcher. After speaking with the dispatcher, he and Constable Bazan proceeded to the residence of Elias Aguirre, appellant's father. Arriving there, Garza spoke with the elder Aguirre and asked to speak with his son, the appellant. When he met appellant at the home, Garza immediately informed appellant of his rights, both in Spanish and English.[1] After the warnings, appellant told Garza that he, appellant, had killed Oscar Javier Lopez. Garza then placed appellant under arrest and asked appellant for the weapon. Appellant told Garza he had the weapon and then appellant told his father to get it from inside the house. Elias Aguirre, appellant's father, returned with the shotgun, State's Exhibit No. 7, and gave it to Garza.

At the hearing outside the presence of the jury, appellant indicated he understood the warning given him by Garza.

At trial, during his testimony on direct examination, appellant testified that he told his father to call the Sheriff's Department. The reason for this was because he wanted the officers to know he shot the deceased in self-defense. He testified that he co-operated with them and gave them the shotgun.

Appellant, on direct examination, testified that he shot the deceased with the shotgun in defense of himself and his brothers.

On cross-examination, appellant identified State's Exhibit No. 7 as the shotgun he used to kill the deceased, Oscar Javier Lopez.

A review of the entire record reveals that appellant made a voluntary oral statement to Deputy Garza, after properly being warned of his *Miranda* rights, and this oral statement led to the instrument with which the offense was committed. *See* TEX.CODE CRIM.PROC.ANN. art. 38.22 § 3(c) (Vernon 1984) and *Lopez v. State,* 535 S.W.2d 643 (Tex.Crim.App.1976).

Additionally, it is well established that the admission of improper evidence cannot be urged as grounds for reversal where the defendant gives testimony on direct examination which establishes the same facts as those to which an objection was addressed. *Thompson v. State,* 652 S.W.2d 770 (Tex.Crim.App.1983). As was noted, appellant admitted on direct examination that he killed the deceased. He also admitted on direct examination that he had his father contact the Sheriff's Department so that he could tell them he shot the

---

**1.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

deceased in self-defense. No error is shown.

The third ground of error is overruled.

In his fourth ground of error, appellant alleges the trial court erred in allowing the prosecutor to cross-examine a witness with an extra-judicial statement allegedly made by a non-testifying witness.

Mrs. Maria Elena Villarreal testified that on the date of the alleged offense she arrived at her home along with her daughter, Maria Antonia Villarreal, three sons and her brother-in-law. Momentarily thereafter, the Aguirre brothers arrived followed by the Lopez brothers and the alleged incident unfolded on the Villarreal property. After describing the events, Mrs. Villarreal testified that she sent her daughter to assist the wounded Jesus Lopez.

On cross-examination, the prosecutor attempted to establish that on the date of the offense, but subsequent to its commission, Mrs. Villarreal denied that she had seen anything when asked by Deputy Cornelio Garza. Her answers regarding this issue are not clear. It seems that at first she denied that any officer spoke to her regarding the incident, while some of her answers indicate that the reason for her action was that she did not want to get involved. She testified that the only person the officers spoke to was her husband. When asked if her daughter, Maria Antonia Villarreal had given a statement, Mrs. Villarreal stated: "They brought her here, after that I don't know." In response to further questioning, she indicated that all her daughter saw of the event was after it occurred and the Lopez brother was on the ground. Thereafter, the prosecutor questioned Mrs. Villarreal as to why her daughter, Maria Antonia, would give a statement to the sheriff's department and district attorney's office, if Maria Antonia had not really seen anything? The prosecutor asked if Maria Antonia had given a statement indicating she had seen the Aguirres get out of the truck with the "rifle" [sic] was Maria Antonia mistaken or lying. The witness insisted it must have been a mistake.

Maria Antonia Villarreal was never called as a witness.

■■■ The action of the prosecutor in questioning the witness concerning what a non-testifying witness may or may not have said in an out-of-court statement, if that statement existed, was clearly improper and should not have been permitted. The cross-examination involved hearsay, a collateral issue which was never factually established by the record, and called for conclusions from the witness on a matter of which she claimed she had no knowledge in the first place.

■■■ Although we find the action of the prosecutor totally improper in this regard, our duty is to determine from the entire record the probable impact of the erroneously admitted testimony upon the minds of an average jury. *See Vanderbilt v. State,* 629 S.W.2d 709 (Tex.Crim.App. 1981), *cert. denied,* 456 U.S. 910, 102 S.Ct. 1760, 72 L.Ed.2d 169 (1982). "A judgment will not be reversed for admission of evidence that did not injure the accused. The question is whether there is a reasonable probability that the evidence complained of might have contributed to the conviction." *Gutierrez v. State,* 628 S.W.2d 57, 62 (Tex. Crim.App.1982). "Unless we find a reasonable possibility that the improperly admitted evidence contributed to appellant's conviction, reversal is not required." *Vanderbilt v. State, supra* at 724.

Examining this area of improper cross-examination by the prosecutor in light of the entire evidence presented in the record, we find that reversal is not required. Appellant admitted shooting both Lopez brothers with a shotgun and claimed self-defense and defense of third persons. Whether or not appellant or his brothers initially exited their truck with a "rifle," or shotgun, does not affect the only central issues in the case of whether or not immediately prior to the shootings appellant was defending himself and/or his brothers. There was no testimony from any witness that the Aguirres exited their truck with any type gun. Even the State's sole eye

witness, Jesus Lopez, stated that after each side faced each other, Jose Guadalupe Aguirre had to run back to the Aguirre's truck to get the shotgun. Under all the facts presented, we find no reversible error. The fourth ground of error is overruled.

Appellant's fifth ground of error is the trial court erred in excluding the testimony of Carlos Vera as rebuttal evidence to establish that appellant did not have contact with anyone, especially family members, prior to making his statement to the police. Appellant asserts this testimony was necessary to rebut the State's inference during cross-examination of appellant that appellant and his brother fabricated that portion of their statements in which they claimed the Lopez brothers had a tire tool at the time of the incident.

The record reflects that after the State closed, the following occurred:

THE COURT: Does the Defense have any rebutable [sic] witnesses?

MR. SANCHEZ: I might have one from the sheriff's department—from the district attorneys office.

Call Carlose Vera to the stand.

(Conference at the Bench).

MR. SANCHEZ: Can I have my other rebutable [sic] evidence on the Bill.

THE COURT: Not before the jury.

MR. SANCHEZ: I close.

THE COURT: The Court is going to grant you your bill, but other than the bill that's what I'm saying.

The jury was then excused. Carlos Vera, chief jailer was called for the bill of exception. Vera testified as to the visitation policy at the jail. Appellant seems also to have attempted to establish through Vera on what dates appellant's wife visited him and the fact that she was not granted any special exception regarding the visitation policy.

In his brief, appellant asserts that his bill of exception has preserved this point for our review. We disagree.

It is well established that a bill of exception must be complete within itself and must stand or fall by its own allegations, and it must plainly set out any error sought to be preserved for review. *Garza v. State,* 622 S.W.2d 85 (Tex.Crim.App. 1981). A bill of exception relating to the exclusion of evidence must set forth the evidence offered, the objections made thereto, the ruling of the court and such facts as may be necessary to disclose its relevancy, materiality and competency. *See Clark v. State,* 142 Tex.Crim.R. 554, 154 S.W.2d 255 (1941) and *West v. State,* 141 Tex.Crim.R. 233, 147 S.W.2d 791 (1941). The appellate court will not indulge in inferences to supply the omission of essential statements in a bill of exception. *Clark v. State, supra.*

The bill of exception before us does not disclose the objection made to the offered evidence; it does not disclose for what purpose the evidence was being offered; and it does not show the ruling of the court. A fair reading of the "preserved" testimony does not even seem to facially relate to the issue for which appellant claims in his brief it was being offered. Assertions in an appellate brief not supported by the record will not be accepted as fact. *Herrin v. State,* 525 S.W.2d 27 (Tex. Crim.App.1975).

Since the bill of exception is not complete in itself, nothing is preserved for review. *See Garza v. State, supra,* and *Herrin v. State, supra.* Appellant's fifth ground of error is overruled.

The sixth ground of error alleges that the evidence is insufficient to sustain the conviction and that appellant's motion for instructed verdict should have been granted. Appellant bases his support upon portions of appellant's written statement, introduced by the State as State's Exhibit No. 6 wherein appellant admits shooting the deceased, that are exculpatory in nature. Appellant claims the State did not disprove those exculpatory portions wherein appellant states they were chased by the Lopez brothers and that a tire tool was thrown by Javier Lopez striking appellant's brother on the chest.

Generally, appellate courts will not consider arguments in a brief which refer to items not included in the record. *Short v. State*, 658 S.W.2d 250 (Tex.App.— Houston [1st Dist.] 1983, pet. granted). State's Exhibit No. 6, along with every other exhibit introduced in this case, is not in the record before us. Appellant's assertions in his brief, as to what is contained in State's Exhibit No. 6 is thus unsupported and cannot be accepted as fact. *See Davila v. State*, 651 S.W.2d 797 (Tex.Crim.App. 1983). However, even if taken as correct, we find that the evidence is sufficient to sustain appellant's conviction. A brief summary of the testimony adduced at trial, which is in the record before us, is all that is necessary to clearly show that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Houston v. State*, 663 S.W.2d 455 (Tex.Crim.App.1984). In reviewing the sufficiency of the evidence, the evidence is viewed in the light most favorable to the verdict or judgment. *Houston v. State, supra.*

Jesus Lopez, the deceased's brother, testified that he and his brother followed the Aguirres to the Villarreal residence on the date in question. Jesus Lopez said the Aguirres had driven past the Lopez residence four times that day making obscene gestures at the Lopez brothers. Jesus Lopez denied a high speed chase of the Aguirre truck was involved and denied that he and his brother tried to run the Aguirres' truck off the road. They followed the Aguirres to confront them and find out why the Aguirres were harassing them. He denied he or the deceased had any weapon including a tire tool. As members of each family got out of their respective trucks at the Villarreal residence, he observed that appellant's brother, Jose Guadalupe Aguirre, had a knife. Jose Guadalupe Aguirre then got a shotgun and pointed it at Jesus and Oscar Javier Lopez. No words were exchanged. When the Lopez brothers saw the shotgun, they stopped. Appellant then took the shotgun from his brother, Jose Guadalupe Aguirre, and first shot Jesus Lopez and then shot and killed Oscar Javier Lopez. According to Jesus Lopez, the violent attack was unprovoked. He denied having a weapon and denied throwing anything at Jose Guadalupe Aguirre.

The defense version was different. According to the defense witnesses, the parties arrived at the Villarreal residence following a high speed chase started by the Lopez brothers. According to appellant and his brother, Jose Guadalupe Aguirre, when the Lopez brothers got out of their truck, Jesus Lopez had a tire tool in his hand. Jesus Lopez threw the tire took striking Jose Guadalupe Aguirre. Appellant told Jose to go to the truck and get appellant's shotgun. When Jose returned with the shotgun, appellant claimed that Jesus Lopez had retrieved the tire tool and was coming towards them. Appellant then shot Jesus Lopez causing him to fall backward and dropping the tire tool. According to appellant, Oscar Javier Lopez said, "You killed my brother, now you are going to have to kill me. You son of your stinking mother." While he said that Oscar Lopez reached for the tire tool, appellant loaded another round into the shotgun. As soon as he saw that Oscar Lopez had reached down, grabbed the tool and was about to, or in the process of standing up, appellant shot Oscar Lopez, killing him. Appellant testified that he shot the Lopez brothers in self-defense and in defense of his brothers. Appellant testified that Oscar Lopez never did threaten him. In response to questioning, appellant testified that Oscar Lopez never raised the tire tool as if to strike appellant. Appellant said he shot Oscar Lopez so as to not give Lopez the chance to attack him, the appellant. Appellant did state that he was afraid of being attacked.

In a criminal case, if there is conflicting evidence, the jury verdict will not be disturbed provided there is sufficient evidence to support that verdict. *Mahavier v. State*, 644 S.W.2d 129 (Tex.App. —San Antonio 1982, no pet.). Here, the testimony of Jesus Lopez was sufficient, if believed by the jury, to support a knowing and intentional murder of Oscar Javier Lo-

pez by appellant as charged under TEX.PENAL CODE ANN. § 19.02(a)(1) (Vernon 1974). Also if believed, the testimony of Jesus Lopez, that he and his brother did not have a tire tool nor any other weapon, and were not threatening the Aguirres in any manner, would have been sufficient evidence to disprove any exculpatory portion of appellant's statement, also introduced by the State, that the Lopez brothers pursued the Aguirres and threw a tire tool striking Jose Guadalupe Aguirre. *Cf. Sloan v. State,* 515 S.W.2d 913 (Tex.Crim. App.1974) (threats made by defendant against deceased sufficient to disprove exculpatory statement of killing in self-defense that arresting officer related that defendant made). The sixth ground of error is overruled.

In two grounds of error appellant complains of the court's charge to the jury regarding voluntary manslaughter. The seventh ground of error alleges the voluntary manslaughter charge failed to include the culpable mental state of "knowingly." By only including the culpable mental state of "intentionally" in that portion of the charge dealing with voluntary manslaughter, appellant claims the trial court raised the burden of proof for voluntary manslaughter. The eighth ground of error alleges that the charge applying to murder and voluntary manslaughter is fundamentally defective under *Cobarrubio v. State,* 675 S.W.2d 749 (Tex.Crim.App.1984).

 A charge on voluntary manslaughter is required only when there is evidence that the appellant acted under the immediate influence of sudden passion arising from an adequate cause. *Lamb v. State,* 680 S.W.2d 11 (Tex.Crim.App.1984). A close examination of the evidence in this cause reveals that the issue of voluntary manslaughter was not raised by the evidence presented by the State and was, in fact, negated by appellant's own testimony.

Viewed in the light most favorable to appellant, the confrontation between the parties followed a high speed chase on the highway. Appellant stopped his truck at a house belonging to his relatives, the Villar-

reals'. Appellant and his brothers exited from the truck. Jesus Lopez and Oscar Lopez stopped their truck, exited and faced the appellant and his brothers. The parties were approximately three to ten yards apart. According to appellant, Jesus Lopez was carrying a tire tool which he threw, striking appellant's brother, Jose Aguirre, on the arm. Appellant told Jose G. Aguirre to go get appellant's shotgun from appellant's truck. When his brother returned with the shotgun, appellant grabbed it. Appellant, then saw that Jesus Lopez had retrieved the tire tool and was walking straight towards him. Appellant fired. The shot struck Jesus Lopez in the arm causing him to drop the tire tool and stumble backwards. Oscar Lopez then told appellant, "You killed my brother, now you are going to have to kill me. You son of your stinking mother." When he saw that Oscar Lopez was going to reach for the tire tool, appellant loaded another round into the shotgun. As soon as he saw that Oscar Lopez had reached down, grabbed the tool and was about to, or in the process of standing up, appellant shot Oscar Lopez, killing him. Appellant testified that he shot the Lopez brothers in self defense and in defense of his brothers. Appellant testified that Oscar Lopez never did threaten him. In response to questioning, appellant testifies that Oscar Lopez never raised the tire tool as if to strike appellant. Appellant said he shot Oscar Lopez so as to not to give Lopez the chance to attack him, the appellant. Appellant did state that he was afraid of being attacked.

 The scenario depicted here is similar to that in *Daniels v. State,* 645 S.W.2d 459 (Tex.Crim.App.1983) in which the deceased threatened to kill the defendant and reached into his back pocket. The defendant, fearful that the deceased was reaching for a gun and fearful for his life, killed him. The Court noted that while entitled to a charge on self-defense, this does not necessarily raise the issue of voluntary manslaughter merely by indicating that at the moment of taking action to defend himself he was fearful of his attack-

er. *Daniels v. State, supra* at 460. "On the other hand, 'fear' that rises to the level of 'terror' may constitute sudden passion when its cause is such that would commonly produce a degree of terror 'sufficient to render the mind incapable of cool reflection' . . . ." *Daniels v. State, supra* at 460. The Court concluded that, "Manifestly, appellant's own appraisal of his situation reveals that he had reflected on it, knew what he had to do and did it." *Daniels v. State, supra* at 460. This same rationale is equally applicable here. There is no evidence that appellant acted under the immediate influence of sudden passion arising from an adequate cause and appellant was not entitled to a charge on voluntary manslaughter. *See Daniels v. State, supra.* Since appellant was not entitled to a charge on voluntary manslaughter, the submission of the charge on voluntary manslaughter, even if erroneous, was a more beneficial charge than appellant was entitled to under the evidence. *See Wilson v. State,* 71 Tex. Crim. 399, 160 S.W. 83 (1913); *Eggleston v. State,* 59 Tex.Crim. 542, 128 S.W. 1105 (1910); *see also Lamb v. State, supra.* A conviction will not be reversed nor may an appellant complain of a beneficial charge erroneously submitted. *Ex parte Green,* 548 S.W.2d 914 (Tex.Crim.App.1977) and *Perez v. State,* 629 S.W.2d 834 (Tex.App.— Austin 1982, no pet.). No reversible error is shown. The seventh and eighth grounds of error are overruled.

In the ninth and tenth grounds of error, appellant alleges the trial court erred in refusing to grant his motion for new trial based upon the jury having received other evidence, after having retired to deliberate, and jury misconduct in considering the effect of parole in assessing punishment.

As to the receipt of other evidence, appellant relies upon two affidavits submitted by Juror Remigio Pena. In the first affidavit, Pena states that he was originally for a punishment term of less than fifty years. Pena further states that Juror Guadalupe Castaneda stated that if the jury assessed a fifty year prison term appellant would be released on parole after serving only ten years. As a result of this statement, Pena,

in his affidavit, states he agreed to increase his recommendation of punishment to fifty years. Appellant also claims the discussion of parole constitutes jury misconduct.

The "other evidence" relied upon by appellant is found in Juror Pena's second affidavit. In this affidavit, Pena asserts that he visited the scene of the offense on three occasions and informed the jurors, during deliberations, that they should not go by the diagrams and sketches in evidence, that he had visited the scene and explained the layout of the scene as he had observed it.

The final portion of "other evidence" in this second affidavit refers to the punishment deliberations. According to Pena, one juror stated that appellant was not the one who shot the deceased, but it was appellant's brother, Jose Guadalupe Aguirre, who shot the deceased. This same juror then stated that since appellant was willing to cover up for his brother, appellant must not care very much for his wife and children.

At the hearing on appellant's motion for new trial, Juror Pena testified that he had requested appellant's attorney to remove Juror Guadalupe Castaneda's name from the first affidavit. Pena also testified, contrary to the first affidavit, that any statement made concerning parole did not influence his decision as to punishment.

As to visiting the scene, Juror Pena indicated that he did not actually visit the scene, but had passed by it in his car on two or three occasions and glanced at the area as he drove past it. At most, Pena admitted that he told the jury to disregard the sketches and diagrams because the number of cars as testified to at trial could not have fit in the area depicted. Pena also stated that he and the other jurors were aware, based upon the prosecution's assertions at trial, that the sketches were not to scale.

The State introduced seven affidavits from seven jurors, including one from Juror Guadalupe Castaneda. These seven affidavits were identical to each other in con-

tent and form. The pertinent portion of each affidavit is as follows:

I sign this affidavit of my own free will and no one has promised me consideration or forced or threatened me to sign this statement. I have read the Motion for New Trial and attached affidavits in the above-styled and numbered cause and I wish to respond as follows:

During the discussion of the punishment to be assessed on Jose Maria Aguirre a reference was made that the defendant, if sentenced to life, would probably not serve the whole sentence. This was the only reference made to the parole laws during deliberations. There was no discussion of this comment and I am of the opinion that the facts in this statement are common knowledge. There was no comment made by any juror concerning any specific number of years the defendant would actually serve if sentenced to a 50 year term.

I did not increase my recommendation of the punishment to be assessed in this case as a result of this comment.

\* \* \* \* \* \*

One juror did state that that juror had heard that the brother of the defendant may have committed the murder. As soon as this statement was made, Mrs. Anita P. Guzman stated that the brother "was not the person on trial" and there was no evidence presented in this regard. No further comment was made on this matter. This comment did not affect my deliberation or alter my recommendation as to punishment.

\* \* \* \* \* \*

During the deliberations on whether or not Jose M. Aguirre was guilty, Mr. Remigio M. Pena stated that he had visited the scene of the crime once and it was his opinion that the sketches of the scene introduced into evidence were not accurate. This was no surprise to me, as the Assistant District Attorney had stated during the examination of witnesses that the sketches were "not to scale".

I did not take Mr. Pena's comment as evidence nor did I disregard the admitted "evidence" sketches as a result of this comment.

\* \* \* \* \* \*

I do not remember any juror commenting that Jose M. Aguirre was covering up for his brother and as such, did not care very much about his wife and children.

Further, this affiant sayeth not.

■■■ In order to mandate a new trial under TEX.CODE CRIM.PROC.ANN. art. 40.03(7) (Vernon 1979), it must be shown that other testimony or other evidence was actually received by the jury, and that such evidence was detrimental to the appellant. *Garza v. State,* 630 S.W.2d 272 (Tex.Crim. App.1981). Additionally, it is the character of the evidence that controls the determination of this issue. *See Alexander v. State,* 610 S.W.2d 750 (Tex.Crim.App.1980).

■■■ The information given to the jurors by Juror Pena that the diagrams admitted into evidence were not accurate as he had observed the scene does constitute "other evidence." Yet, the character of the evidence clearly reveals that it could not have been detrimental to the accused. Appellant admitted shooting the deceased. The only disputed fact issues revolved around whether or not appellant was defending himself and others from an attack by the complainant. The positioning of the vehicles or how many vehicles could actually fit into the scene was of no consequence in deciding the disputed issues.

The jurors' affidavits, relied upon by the State, show that the jurors were already aware that the sketches or diagrams were not to scale. Even though they were aware the sketches were not to scale, and despite Juror Pena's remarks, the jurors did not disregard the admitted sketches.

■■■ Under the circumstances presented, we find this "other evidence" not to have been detrimental to appellant. *But see Trevino v. State,* 582 S.W.2d 111 (Tex. Crim.App.1979).

■ The comment by one juror, that the juror had heard that appellant's brother had shot the deceased, likewise constitutes "other evidence" received by the jury. The jurors affidavits supplied by the State confirm that this particular statement was made but immediately thereafter, Juror Guzman stated that the brother was not the person on trial. The affidavits further reflect no further evidence or comment was made in regard to this matter.

The portion of the affidavits signed by the jurors stating that no further comment was made refutes the allegation, in Pena's affidavit, that this juror additionally stated that appellant must not care for his wife and children if he were willing to cover up for his brother.

■ Thus, if the State's evidence was relied upon by the trial court, as it had the discretion to do, the only remark made was that the juror had heard that appellant's brother had shot the deceased, followed by the cautionary instruction of Juror Guzman and no further comment was made regarding this matter.

■ Generally, improper statements made casually or incidentally during jury deliberations will not compel the granting of a new trial if jurors do not further discuss them. *See Rodriguez v. State*, 661 S.W.2d 332 (Tex.App.—Corpus Christi 1983, pet ref'd). A trial court's decision regarding an issue of fact as to jury misconduct will not be reversed unless there has been an abuse of discretion. *Jones v. State*, 596 S.W.2d 134 (Tex.Crim.App.1980). Such is the situation before us and we find no abuse of discretion by the trial court in its decision regarding this issue. *See Jones v. State*, 641 S.W.2d 545 (Tex.Crim.App. 1982); *Nacol v. State*, 590 S.W.2d 481 (Tex. Crim.App.1979); and *Rodriguez v. State*, *supra.*

The evidence presented on the issue of a discussion by the jurors of parole and the length of time appellant would serve is also conflicting. Juror Pena stated in his affidavit that he was originally for a prison term of less than fifty years but agreed to the fifty year prison term after a juror said that appellant would be released on parole after serving only ten years. At the hearing on the motion for new trial, and in response to questioning by the prosecutor, Pena said that it was untrue that he increased his recommendation on punishment due to the statement on parole and the length of time appellant would have to serve.

The juror's affidavits introduced by the State alleged that the only reference to parole, during the entire deliberations, was that if appellant were sentenced to life he would probably not serve the whole sentence. In these affidavits, the jurors specifically deny that any juror made a comment concerning any specific number of years appellant would have to serve if sentenced to fifty years.

■ To show that a jury's discussion of the parole law constitutes reversible error under either § 7 or § 8 of TEX.CODE CRIM.PROC.ANN. art. 40.03 (Vernon 1979), it must be shown that there was (1) a mis-statement of the law, (2) asserted as a fact, (3) by one professing to know the law, (4) which is relied upon by other jurors, and (5) who for that reason change their vote to a harsher punishment. *Sneed v. State*, 670 S.W.2d 262 (Tex.Crim.App.1984) (On rehearing) (not yet reported). Further, determination of the issues of fact as to jury misconduct at a hearing on motion for new trial are for the trial court and when there is conflicting evidence, there is no abuse of discretion in overruling the motion for new trial. *Id.*

■ In light of the conflicting evidence presented to the trial court regarding the jury's discussion of parole, the five prong test recently set out in *Sneed v. State*, *supra*, has not been established and no abuse of discretion by the trial court has been shown.

The ninth and tenth grounds of error are overruled.

Appellant's eleventh ground of error alleges the trial court erred in denying his motion for mistrial when it became evident

that the prosecution had suppressed demonstrative evidence favorable to appellant. The evidence of which appellant complains are photographs, taken the day after the alleged offense by Deputy Cornelio Garza, showing a bruise on the arm of Jose Guadalupe Aguirre, appellant's brother. Appellant claims that because the photographs were given to him prior to the State's last witness on the guilt-innocence phase, and prior to the State resting, he was denied the opportunity to cross-examine the previous State's witnesses.

■ Although the evidence regarding the actions of the parties regarding these photographs is diffused throughout the record, a total review of the evidence does not support appellant's contention that the State suppressed the photographs nor that his cross-examination of the State's witnesses was hindered.

■ The record reflects that on October 26, 1982, and immediately prior to trial, the State tendered to the trial court, for an in camera inspection, certain photographs which appellant claimed were exculpatory. Appellant claimed that these photographs were of appellant's brother, Jose Guadalupe Aguirre, and showed a bruise on his arm. Appellant indicated that the photographs would show the injury was the result of an attack. The trial court denied appellant the photographs until some evidence arose in the case which would give them some probative value. Suppression by the prosecution of evidence favorable to the accused violates due process when the evidence is material to guilt or punishment. *Hawkins v. State*, 660 S.W.2d 65 (Tex.Crim.App.1983) and cases cited therein. Here, the trial court denied appellant, temporarily, the use of the photographs which the State correctly tendered to the trial court for a decision on the issue prior to the commencement of trial. To characterize this action by the State as suppression of evidence favorable to the accused is ludicrous. Further, in *Losoya v. State*, 636 S.W.2d 566, 571 (Tex.App.—San Antonio 1982, no pet.), this court stated:

... The rule in Texas is that *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) in addition to applying to suppression of evidence by the prosecutor, applies "to situations where evidence favorable to the accused is not turned over to the accused prior to or *during trial,* thus depriving him of the opportunity to use it in his defense." (Emphasis added.) *Juarez v. State*, 439 S.W.2d 346 (Tex.Cr.App.1969). Our courts also hold that disclosing evidence at trial affords the accused the opportunity to request a postponement or a continuance and this adequately satisfied the due process requirements of *Brady*. *Payne v. State*, 516 S.W.2d 675 (Tex.Cr. App.1974).

Here, the record reflects that the photographs were turned over to appellant during trial. Appellant had nine of these photographs identified but only offered three into evidence. These three photographs were admitted during defense testimony at the guilt-innocence phase. Appellant never sought a recess, let alone a postponement or continuance, because of the time of the disclosure. *Payne v. State*, 516 S.W.2d 675 (Tex.Crim.App.1974) (ten days pre-trial disclosure of witness' statement not required in Texas under *Brady* ).

Appellant has failed to show how or in what manner his cross-examination of the State's witnesses was limited. No bill of exception was perfected and generally, under such circumstances, nothing is presented for review. *See Toler v. State*, 546 S.W.2d 290 (Tex.Crim.App.1977).

Appellant has failed to show how, if earlier received, the photographs would have advanced his defense or materially affected the guilt-innocence or punishment issues before the jury. *See Losoya v. State, supra.* Appellant has even failed to have the photographs included in the record before us. The eleventh ground of error is overruled.

■ In his last ground of error, appellant alleges that the accumulation of errors, as listed in his first through eleventh

grounds, deprived him of a fair and impartial trial and constitutes reversible error.

This ground of error is not in compliance with TEX.CODE CRIM.PROC.ANN. art. 40.09, § 9 (Vernon 1984) and presents nothing for review. *McIlveen v. State*, 559 S.W.2d 815 (Tex.Crim.App.1977) and *Gantz v. State*, 661 S.W.2d 213 (Tex.App.—San Antonio 1983, pet. ref'd). Further, we find no error that can be cumulated in the record before us. *See Henry v. State*, 567 S.W.2d 7, 9 (Tex.Crim.App.1978) and *Gantz v. State, supra.* The twelfth ground of error is overruled.

The judgment is affirmed.