**Raul RODRIGUEZ, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 13–82–114–CR.**

Court of Appeals of Texas, Corpus Christi.

Nov. 23, 1983.

Albert A. Pena, III, Corpus Christi, for appellant.

Grant Jones, Crim. Dist. Atty., Corpus Christi, for appellee.

Before NYE, C.J., and YOUNG and KENNEDY, JJ.

## OPINION

NYE, Chief Justice.

Appellant was convicted of voluntary manslaughter by a jury. Punishment, enhanced by a prior felony conviction, was also determined by the jury, and was assessed at eighty-five years imprisonment and a $10,000.00 fine.

The issues on appeal include whether the State was impermissibly allowed to impeach its own witness; whether the State failed to disprove exculpatory evidence it introduced; whether jury misconduct occurred; and whether the trial court erred by charging the jury on involuntary manslaughter. The sufficiency of the evidence to support the conviction is not directly challenged. We affirm the judgment of the trial court.

The record reflects that on February 24, 1981, appellant entered a lounge in Corpus Christi. Once inside, he passed close by a woman who was playing "pool," and for some reason he called her a "bitch" and slapped her. The woman then stabbed him either in the back or on his side. Immediately afterward, the woman was shot and killed. Although several patrons of the bar testified at trial that they had been present, no one was able to reconstruct exactly the entire sequence of events.

In his first ground of error, appellant contends that the State was improperly permitted to impeach its own witness. Mr. Augustin Guzman testified as a State's witness. He testified that he heard a shot shortly after appellant walked back toward the restroom, but that he did not see appellant do anything after the shooting. The prosecutor then attempted to show that Mr. Guzman had given a statement on the night of the shooting which contradicted his trial testimony. Based on the prosecutor's statement of surprise, the trial court overruled appellant's objection. Guzman was then allowed to examine a copy of his previous statement, after which he testified differently to the effect that he saw appellant turn and leave, and that "he might have had some blood on his coat in the back." Appellant argues that the State did not properly demonstrate that it was entitled to impeach its own witness because (1) there was no hearing outside the presence of the jury and (2) the only proof offered to show surprise was the prosecutor's "naked assertion" of surprise.

In order for the State to impeach its own witness, the witness must testify to facts injurious to the State's case and the State must demonstrate that it was surprised by such testimony. Surprise may be demonstrated by showing, outside the presence of the jury, prior conversations with or prior statements made by the witness. *Hunnicutt v. State,* 523 S.W.2d 244 (Tex.Cr. App.1975); *Williams v. State,* 521 S.W.2d 250 (Tex.Cr.App.1975).

■ The record reflects that the prosecutor clearly demonstrated surprise in a "whispered" conversation held after both attorneys were directed to approach the bench. In addition, we note that the purpose of the rule requiring a showing of surprise is to prevent a party from calling a witness who the party knows will testify adversely, and then, under the guise of impeachment, present before the jury the testimony hoped to be elicited all along. *Cherb v. State,* 472 S.W.2d 273 (Tex.Cr.App. 1971). This is not the case that is before us. The State showed by the witness' own testimony that there was a prior inconsistent statement. The witness, when confronted with his prior statement, admitted signing it and then stated that it refreshed his memory, whereupon he changed his testimony, in effect admitting that the prior written statement was the correct version. See *Brown v. State,* 523 S.W.2d 238 (Tex.Cr. App.1975). Here, the prosecutor did not *impeach* his witness; rather, he merely jogged his memory. In addition, the evidence elicited from the witness was corroborated by several other witnesses. See *Ortega v. State,* 659 S.W.2d 35 (Tex.Cr.App. 1983). Appellant's first ground of error is overruled.

■ In his second ground of error, appellant contends that the evidence was insufficient to support his conviction because the State introduced, and then failed to disprove, an exculpatory statement allegedly made by him that tended to clear the appellant of his guilt. Appellant's parole officer testified as a State's witness that appellant told her over the telephone that:

"He hit [the deceased] or he slapped her and he walked off, and as he was walking away she stabbed him with a small knife in the back. He was walking toward the bar, pulled a gun out of his shirt, it was on his person, and he shot her."

Appellant contends that this testimony showed that he was not guilty of voluntary manslaughter, but that the shooting was in self-defense. When the State offers a defendant's exculpatory statement into evidence, the exculpatory portion must be re-futed by other evidence, and failure to do so will be grounds for acquittal. *Swink v. State,* 617 S.W.2d 203 (Tex.Cr.App.1981); *Pope v. State,* 505 S.W.2d 556 (Tex.Cr.App. 1974).

■ Even if we interpret the testimony of the parole officer to be exculpatory, we hold that the State adduced ample evidence to disprove appellant's claim of self-defense. For instance, Mr. Flores testified that the deceased pulled a knife; that it looked to him as if she was trying to get away; that she then started backing away and looked scared when appellant came closer; and that she was then shot. Ms. Leonor Martinez testified that the man who shot the deceased was "[a]bout halfway down the bar" away when he shot her. We overrule appellant's second ground of error.

■ In his third ground of error, appellant contends that he should have been granted a new trial because he received an increased assessment of punishment after the jury discussed and misstated the parole law. In a post-trial hearing on the Motion for New Trial, juror Frances Powell testified that the effect of the parole law was discussed even after a warning that it was improper discussion. Juror Powell further testified that some of the jurors mentioned specific lengths of time that appellant would have to serve, but that she could not recall with certainty what was said; she thought that someone had said that if appellant was given twenty years he would serve "maybe five years" and that he might serve only "months on five years or maybe two years." Juror Aleman, however, stated that the foreman said that "if we give him twenty, he'll be in less than two years and this gentleman will be out on the street killing people." According to Juror Aleman, no one suggested that the jury not consider these matters.

These allegations were disputed. Juror Pearsall conceded that she asked Juror Powell whether she wanted appellant "out in a short length of time," but denied hearing anyone else mention any specific number of years or state that they knew anything about the parole law. In addition,

the jury foreman, Wagner, testified that he instructed the jurors not to discuss parole, "and after that nothing else was said." He further testified that no juror claimed any specific knowledge of how the parole system worked and that no specific number of years was mentioned when parole was discussed. A fact issue was thus presented on whether the misconduct occurred. The proper tribunal to determine what occurred in the jury room was the trial court who hears the witnesses. *Diaz v. State,* 660 S.W.2d 93 (Tex.Cr.App.1983). *Appleman v. State,* 531 S.W.2d 806 (Tex.Cr.App.1975); *Walton v. State,* 398 S.W.2d 555 (Tex.Cr. App.1966). The trial court did not abuse its discretion by refusing to accept appellant's version of the contested facts. The third ground of error is overruled.

In his fourth ground of error, appellant contends that he should have been granted a new trial because a juror "stated that he knew the defendant's family, and . . . left the impression . . . that [appellant] came from a mean, violent family. Thus, at least two jurors assessed a higher punishment than they initially were inclined to assess."

Juror Powell testified that "one of the jurors said something that sounded like . . . [he] had something against [appellant]," thus giving her "a feeling that he may have been against the person to start with . . . ." Juror Aleman testified that he also recalled that the juror said that he knew something about appellant's family that made it sound like a "corrupted" family. Neither juror was able to recall a tangible statement. Juror Aleman testified that, "I did question him, but he didn't respond. As a matter of fact, I forgot what it pertained to." Juror Aleman conceded that the other juror refused to expound the original statement.

Jury Foreman Wagner testified that the juror said he knew appellant's "aunt or something like that, some distant relative of his", but that the statement "was just real sketchy, like he thinks he knows them." Juror Wagner further stated that "[w]e didn't hear anything else after that. He didn't say anything. He only said one sentence. Then he stopped talking about it."

Reversible error because of jury misconduct may not be shown by indefinite and vague evidence. *Raney v. State,* 142 Tex.Cr.R. 206, 151 S.W.2d 810 (1941). This case is somewhat analogous to situations where the defendant's failure to testify was mentioned or discussed by a jury. Allegedly improper statements made casually or incidentally will not compel the granting of a new trial if the jurors do not further discuss them. *Nacol v. State,* 590 S.W.2d 481 (Tex.Cr.App.1979). We hold that the offhanded remark did not constitute reversible error under the circumstances of this case. Appellant's fourth ground of error is overruled.

In his fifth and final ground of error, appellant contends that the trial court erred by charging the jury on involuntary manslaughter because that offense was neither raised by the evidence nor charged in the indictment. First, appellant was convicted of *voluntary* manslaughter. We find no merit in his attack on a portion of the charge under which he was not convicted. *O'Pry v. State,* 642 S.W.2d 748 (Tex.Cr.App.1981); *Sykes v. State,* 399 S.W.2d 349 (Tex.Cr.App.1966). Second, the instruction did not authorize conviction on a theory not alleged in the indictment. Article 37.08 of the Texas Code of Criminal Procedure (Vernon 1981) authorizes the jury to convict a defendant for a lesser included offense after acquitting the defendant on the greater charge. Involuntary manslaughter is a lesser included offense of both murder and voluntary manslaughter. *Brooks v. State,* 548 S.W.2d 680 (Tex.Cr.App.1977).

Lesser included offenses need not be pleaded in the indictment. Once the jurisdiction of the trial court is properly invoked to try the offense with which a defendant is charged, that jurisdiction may not be restricted so as to prevent the trial court from proceeding to judgment on a lesser included offense. *Ex Parte McClelland,* 588 S.W.2d 957 (Tex.Cr.App.1979). If there is sufficient evidence to submit the issue of involuntary manslaughter, as there

was in this case, the trial court may so charge the jury even in the absence of a request by appellant. *Smith v. State,* 644 S.W.2d 500 (Tex.App.—Corpus Christi 1982, d.r. ref'd). In fact, a charge on a lesser-included offense, if supported by the evidence, may properly be given even over appellant's objection. *Humphries v. State,* 615 S.W.2d 737 (Tex.Cr.App.1981). All of appellant's grounds of error are overruled.

The judgment of the trial court is affirmed.