**Felipe CHEW, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 04–89–00149–CR.**

Court of Appeals of Texas,
San Antonio.

Feb. 20, 1991.

* Justice Orlando Garcia, not participating.

Jaime O. Garza, Alice, for appellant.

Heriberto Silva, Dist. Atty., Rio Grande City, for appellee.

Before REEVES, C.J., and CARR, CHAPA, BUTTS, PEEPLES and BIERY, JJ., en banc.*

ON APPELLEE'S MOTION FOR
REHEARING EN BANC

CHAPA, Justice.

Appellee's motion for rehearing is denied by this court sitting en banc. The opinion of November 7, 1990 is withdrawn, and the following is now filed as the opinion of this court.

We hold that reversible error was committed when 1) the appellant was refused his constitutional right of confrontation, and 2) appellant's motion for new trial, based on jury misconduct and newly available evidence, was denied.

The appellant was tried for kidnapping aggravated by an intent to commit sexual assault, which the State clearly attempted to establish by evidence of an actual sexual assault upon the complainant. Before the jury was impaneled, the court was advised by the prosecution that they wished to present a motion to dismiss because the complainant no longer wished to press charges. The court was advised that the complainant had signed an affidavit to that effect, contending media harassment. At the suggestion of the court, the jury was impaneled and the motion was then

presented to the court out of the hearing of the jury. The court ordered the complainant to testify "under penalty of contempt of court," and the complainant then agreed to testify.

It is apparent from the record that the only defense the appellant relied on was based upon the consent of the complainant. From the outset, the appellant clearly made it known to the court that in presenting his defense, he would exercise his constitutional right of confrontation and would show bias and motive on the part of the complainant to falsely allege lack of consent. Lack of consent, being critical to the charge of aggravated kidnapping as well as to the sexual assault which formed the evidentiary base for the aggravation, thus immediately became the central focal point of contention.

With the prosecution and defense presenting conflicting evidence as to consent or lack thereof, the evidence disclosed that the complainant was picked up late at night, when returning from a party, by the appellant and others in a car; that she was taken to a ranch where cock fights were taking place; that at the ranch, varied sexual activities took place between the complainant and a number of men, including the appellant, and; that the appellant and others who had taken her to the ranch, left her there to return with someone else. The prosecution contended that all of this took place against the complainant's will, while the defense insisted that she consented to each of these acts.

Because the trial court granted the State's motion in limine prior to the trial, excluding any evidence of the complainant's subsequent sexual misconduct, the appellant presented considerable and significant evidence in a bill of exceptions. The bill of exceptions reveals testimony by a number of men describing numerous separate sexual encounters between the complainant and several men at the same time, which took place in the complainant's home, in other homes, and in vehicles. The testimony disclosed that these encounters had taken place between the time of the incident in question and up to just thirty (30) days before this trial. These men also testified that the complainant not only participated willingly but at times instigated the sexual encounters, even with men who were complete strangers.

During the trial, the appellant presented the testimony of Dr. Lawrence Taylor, a qualified psychiatrist with expertise in sexual disorders. Dr. Taylor described the illness of "nymphomania" as a condition occasionally found in females, consisting of an unmanageable sexual desire which results in dramatic frequency of sexual contact with a partner as well as indiscriminate sexual contact with groups. Dr. Taylor testified that it was not uncommon for females afflicted with this illness to attempt to hide their condition from the general public as well as from their own family, and further, that those afflicted very seldom seek medical attention on their own. The trial court, however, prohibited the appellant from posing a hypothetical question to the doctor based on the evidence adduced in the bill of exceptions, ruling that the question would be permitted only outside the hearing of the jury.

In the court's chambers, outside the hearing of the jury, Dr. Taylor was posed a hypothetical question with the facts adduced in the bill of exceptions about the complainant's alleged consensual sexual misconduct subsequent to the occasion in question. He responded that the facts were "in keeping with a diagnosis of nymphomania." The doctor further testified that when females afflicted with this illness are caught or confronted, they have a tendency "to cover up you might say but that would not stop them usually." He testified that he meant that such a person, even after being caught or confronted, would usually "continue on with the sexual promiscuity and the amount and number of people." In response to questions by the prosecution, out of the hearing of the jury, Dr. Taylor stated that a female so afflicted could possibly be raped but that it was not probable. The court prohibited all the evidence adduced in the bill of exceptions, including the critical part of Dr. Taylor's testimony, from being presented to the jury; the court also prohibited cross-exami-

nation of the complainant on the same subject. In so doing, the court erred.

The issue here is the application of the Sixth Amendment of the Constitution of the United States which provides:

In all criminal prosecutions, the accused shall enjoy the right ... *to be confronted with the witnesses against him* ....

U.S. CONST. amend. VI. (Emphasis added.)

The Texas Court of Criminal Appeals has clearly directed that the Sixth Amendment must be liberally construed in order that an accused may receive all the protection intended by the Constitution. *See Evans v. State*, 519 S.W.2d 868, 871–72 (Tex.Crim. App.1975). In *Evans*, the court held it was reversible error to exclude evidence that the State's witness was under indictment for sodomy at the time of trial. *Id.* at 873. The court reasoned that this evidence would tend to establish bias, prejudice, and motive on the part of the State's witness, and thus, should have been admitted. *Id.* The court noted that:

The Court has frequently stated that *great latitude* should be allowed the accused in showing *any fact* which would tend to establish ill feeling, bias, motive and animus upon the part of any witness testifying against him.

\*   \*   \*   \*   \*   \*

The accuracy and truthfulness of [the witness's] testimony was a key element in the State's case against appellants. The claim of bias, interest and motive which the defense sought to develop was admissible to afford a basis for an inference of undue pressure because of [the witness's] vulnerable status as an indictee, as well as [the witness's] possible concern that he might be a suspect in the offense.

We conclude that appellants were denied the right of effective cross-examination, which is 'constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it....'

*Id.* at 871–73. (Remaining citations omitted; emphasis added.)

In *Steve v. State*, 614 S.W.2d 137 (Tex. Crim.App.1981), the court held that in a case of indecency with a child, it was reversible error to exclude evidence showing that a child abuse investigation was pending against the mother of the complaining child at the time the charge was made against the accused. *Id.* at 140. The court stated:

The trial court sustained the state's objection that this evidence was irrelevant. *The motives which operate on the mind of a witness while he testifies should never be regarded as immaterial or irrelevant.* McDonald v. State, 77 Tex. Cr.Rep. 612, 179 S.W. 880 (1915). Great latitude should be allowed the accused in showing *any fact* which would tend to establish ill feeling, bias, motive, or animus upon the part of any witness testifying against him. *The jury should be given the opportunity to judge for themselves the witness's credibility in light of the witness's feeling toward the accused and his motive for testifying....*

*Id.* (Emphasis added; citations omitted.)

The basis for the Texas Court of Criminal Appeals' holdings is the decision of the Supreme Court of the United States in *Davis v. Alaska*, 415 U.S. 308, 318, 94 S.Ct. 1105, 1111, 39 L.Ed.2d 347 (1974). In *Davis*, Richard Green was a crucial witness for the State in establishing the guilt of the accused. *Id.* at 310, 94 S.Ct. at 1107. Prior to trial, the trial court granted the State a motion for a protective order to prevent any reference to Green's juvenile record by the defense in cross-examination. *Id.* at 311, 94 S.Ct. at 1107. The juvenile offense had been committed over a year before the trial but Green was still on probation. *Id.* The trial court granted the protective order, relying on Alaska Rule of Children's Procedure 23 and Alaska Stat. § 47.10.080(g) (1971), which protect juvenile records from disclosure. *Id.* The Supreme Court of the United States held it was reversible error, emphasizing that the Sixth Amendment guarantees significant cross-examination rights, which include exposure of a witness' motivation in testifying. *Id.*

at 318, 94 S.Ct. at 1111. In reversing, the Supreme Court stated:

The Sixth Amendment to the Constitution guarantees the right of an accused in a criminal prosecution 'to be confronted with the witnesses against him.' This right is secured for defendants in state as well as federal criminal proceedings under *Pointer v. Texas,* 380 U.S. 400, 13 L.Ed.2d 923, 85 S.Ct. 1065 (1965). Confrontation means more than being allowed to confront the witness physically. 'Our cases construing the [confrontation] clause hold that a primary interest secured by it is the right of cross-examination.' *Douglas v. Alabama,* 380 U.S. 415, 418, 13 L.Ed.2d 934, 85 S.Ct. 1074 (1965)....

\* \* \* \* \* \*

... A more particular attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand. The partiality of a witness is subject to exploration at trial, and is 'always relevant as discrediting the witness and affecting the weight of his testimony.' 3A J. Wigmore Evidence § 940, p. 775 (Chadbourn rev. 1970). We have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. *Greene v. McElroy,* 360 U.S. 474, 496, 3 L.Ed.2d 1377, 79 S.Ct. 1400 [1413] (1959).

In the instant case, defense counsel sought to show the existence of possible bias and prejudice of Green, causing him to make a faulty initial identification of petitioner, which in turn could have affected his later in-court identification of petitioner.

We cannot speculate as to whether the jury, as sole judge of the credibility of a witness, would have accepted this line of reasoning had counsel been permitted to fully present it. But we do conclude that the jurors were entitled to have the benefit of the defense theory before them so

that they could make an informed judgment as to the weight to place on Green's testimony which provided 'a crucial link in the proof ... of petitioner's act.' *Douglas v. Alabama,* 380 U.S. at 419 [85 S.Ct. at 1077] 13 L.Ed.2d 934. The accuracy and truthfulness of Green's testimony were key elements in the State's case against petitioner....

\* \* \* \* \* \*

... In this setting we conclude that the right of confrontation is paramount to the State's policy of protecting a juvenile offender. Whatever temporary embarrassment might result to Green or his family by disclosure of his juvenile record—if the prosecution insisted on using him to make its case—is outweighed by petitioner's right to probe into the influence of possible bias in the testimony of a crucial identification witness....

As in *Alford* [v. U.S., 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed.2d 624 (1931)], we conclude that the State's desire that Green fulfill his public duty to testify free from embarrassment with his reputation unblemished must fall before the right of petitioner to seek out the truth in the process of defending himself....

*Id.* 415 U.S. at 315–20, 94 S.Ct. at 1109–12.

The appellant aptly cites the case of *Olden v. Kentucky,* 488 U.S. 227, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988), in support of his contention that the trial court violated his Sixth Amendment right to cross-examine the complainant about her alleged subsequent consensual group sex activities. In *Olden,* a black accused was indicted for kidnapping, rape, and forcible sodomy of a white woman. *Id.* at 228, 109 S.Ct. at 4. The accused asserted that the acts were consensual, and that the complainant had lied in contending these acts were against her will for fear of jeopardizing her relationship with another black man, with whom she was living at the time of the trial. *Id.* at 229, 109 S.Ct. at 481. The accused attempted to cross-examine the complainant at trial about her currently living with her black boyfriend, for the purpose of showing a motive of the complainant to lie to protect her relationship. *Id.* at 230, 109 S.Ct. at 482. However, the

trial court refused to permit the cross-examination of the complainant on the grounds that the probative value was outweighed by its possibility for prejudice because she was white and her boyfriend was black. *Id.*

The Supreme Court of the United States held that the accused was denied his Sixth Amendment right "to be confronted with the witnesses against him". *Id.* at 231, 109 S.Ct. at 482; U.S. CONST. Amend. VI. The Court charged that although the trial court may "impose reasonable limitations", the trial court placed a "limitation here beyond reason." *Id.* at 232, 109 S.Ct. at 483. "Speculation as to the effect of jurors' racial biases cannot justify exclusion of cross-examination with such strong potential to demonstrate the falsity of [the complainant's] testimony." *Id.* The Court further stated:

In *Davis v. Alaska,* we observed that, subject to "the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation ..., the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness." *Id.* at 316, 39 L.Ed.2d 347, 94 S.Ct. at 1105. We emphasized that "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Id.,* at 316–317, 39 L.Ed.2D 347, 94 S.Ct. [at] 1105, citing *Greene v. McElroy,* 360 U.S. 474, 496, 3 L.Ed.2d 1377, 79 S.Ct. 1400 [1413] (1959). Recently, in *Delaware v. Van Arsdall,* 475 U.S. 673, 89 L.Ed.2d 674, 106 S.Ct. 1431 (1986), we reaffirmed *Davis,* and held that "a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors ... could appropriately draw inferences relating to the reliability of the witness.'" 475 U.S., at 680, 89 L.Ed.2d 674, 106 S.Ct. at

1431, quoting *Davis, supra,* [415 U.S.] at 318, 39 L.Ed.2d 347, 94 S.Ct. 1105 [1111]. *Id.* 488 U.S. at 231, 109 S.Ct. at 483.

As in *Olden,* the trial court here placed limitations on the appellant's Sixth Amendment right of cross-examination that were "beyond reason" and unjustifiably excluded "cross-examination with such strong potential to demonstrate the falsity of [the complainant's] testimony". *Id.*

In *Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986), the Court found that the appellant had demonstrated "a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors ... could appropriately draw inferences relating to the reliability of the witness.'" *Id.* at 680, 106 S.Ct. at 1436. Likewise, in the present case, the excluded cross-examination, which was based on the evidence adduced in the bill of exceptions, had the potential to expose facts from which the jurors could have appropriately drawn inferences not only as to the consent of the complainant, but also as to a motive to lie to protect her alleged affliction. As the United States Supreme Court emphasized, "[w]e cannot speculate as to whether the jury ... would have accepted this line of reasoning had counsel been permitted to fully present it ... [b]ut ... the jurors were entitled to have the benefit of the defense theory before them so they could make an informed judgment...." *Davis,* 415 U.S. at 320, 94 S.Ct. at 1112.

One dissent would condone the deprivation of this appellant's constitutional right of meaningful confrontation by merely concluding that Texas Rules of Criminal Evidence 404 and 405 do not justify the admission of the suppressed evidence; moreover, the dissent argues that the complainant's character traits, as well as the complainant's motive to falsely accuse, were not 'elements' of appellant's defense.

Assuming, without agreeing, that Texas Rules of Criminal Evidence 404 and 405 do

not justify the admission of the suppressed evidence, these rules of evidence must give way to the accused's right of cross-examination just as the United States Supreme Court required the Alaska state statute protecting juvenile records to give way to the constitutional right of cross-examination of the accused in *Davis*. *Davis*, 415 U.S. at 310, 94 S.Ct. at 1107. Further, rule 404 permits "evidence of a pertinent trait of character of the victim of the crime offered by an accused," and rule 405 provides that "[i]n cases in which character or trait of character of a person is an essential element of a ... defense, proof may also be made of specific instances of his conduct." TEX.R.CRIM.EVID. 404(a)(2); TEX.R. CRIM.EVID. 405(b).

The dissent concludes that the character trait of the complainant sought to be established by the defense was not an element of the defense. What the defense sought to establish by the suppressed evidence was not just a character trait of the complainant, but an alleged medical affliction which had a direct connection with the defense of consent. At the commencement of the trial, the appellant made it clear that the only defense he would present was consent of the complainant. Certainly, the alleged affliction of the complainant which the appellant sought to show by the suppressed evidence had the tendency of creating a propensity, on someone so afflicted, of not only consenting to group sexual contacts, but of inducing them. Thus, the suppressed evidence would at least have the effect of casting serious doubts on the complainant's allegations that she did not consent either to the alleged kidnapping or to the eventual alleged sexual assault.

Likewise, the motive of the complainant to falsely accuse and pursue the charge was critical to appellant's only defense. Appellant's constitutional right of meaningful cross-examination as to the complainant's motive to falsely accuse was emphasized by the United States Supreme Court when they stated that they "recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Davis*, 415

U.S. at 316, 94 S.Ct. at 1110. The Texas Court of Criminal Appeals' likewise, stated that "[t]he jury should be given the opportunity to judge for themselves the witness's credibility in light of the witness's feeling toward the accused and his motive for testifying." *Steve*, 614 S.W.2d at 140.

The appellant made it abundantly clear from the outset of the trial that in presenting his only defense of consent, he would rely on the suppressed evidence to show that the complainant had a motive to lie initially about her lack of consent to hide her sexual affliction from the public as well as from her jealous husband who, undoubtedly, would require that she explain her whereabouts all night upon returning home the following morning. The appellant further asserted that this same motive which caused the complainant to lie initially required her to continue to lie until the suppressed evidence was discovered by the appellant which resulted in her subsequent refusal to testify at the trial.

■ As such, the appellant was denied the right of meaningful confrontation, which is "constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it." *Davis*, 415 U.S. at 318, 94 S.Ct. at 1111. The appellant was prevented from presenting the only defense he had. Thus, this error alone requires that the case be reversed and remanded. However, this case also requires reversal because the motion for new trial should have been granted. The motion for new trial was based on allegations of jury misconduct. In *Garza v. State*, 630 S.W.2d 272 (Tex.Crim.App.1981) (op. on reh'g en banc), the Texas Court of Criminal Appeals clarified the rule as to jury misconduct:

As *Rogers* and *Hunt* make clear, V.A. C.C.P., Article 40.03(7) requires reversal when the evidence shows that "other evidence" was received by the jury during its deliberations and that "other evidence" was detrimental to the defendant. This Court simply will not inquire into whether or how the jury's deliberations were affected by this "other evidence"

when the two requirements of Article 40.03(7) have been met.

*Id.* at 276, citing, *Hunt v. State*, 603 S.W.2d 865 (Tex.Crim.App.1980), and *Rogers v. State*, 551 S.W.2d 369 (Tex.Crim.App. 1977).

The trial court here was presented with sworn affidavits and testimony of jurors Armando Garza and Angel Galvan. Garza testified that while the jury was in the jury room and within the hearing of all the jurors, one of the jurors told the jury that the appellant was on parole, that he had escaped from jail, had probably had sex with his wife, and had gotten his wife pregnant. Garza further stated that a different juror also made the statement in the jury room that the appellant had another charge of rape against him and that these comments had bothered him and crossed his mind during the guilt/innocence and punishment deliberations. Although the testimony is unclear, at one point Garza testified that the statements were made before the guilty verdict had been reached. Galvan further stated that he also recalled several jurors saying that if they gave the appellant thirty (30) years he would only serve twenty (20) or fifteen (15) years, which he objected to because it was too much punishment for appellant to serve "for nothing." It is uncontradicted that this "other evidence" was not introduced or received into evidence during the trial. Certainly, this is "other evidence" "received by the jury during its deliberation" which "was detrimental to the defendant" and which "requires reversal." *Garza*, 630 S.W.2d at 276.

It is also uncontradicted that the jury was permitted to take into the jury room State's Exhibit 1, which was not introduced during the trial and was the complainant's affidavit that she did not wish to prosecute due to media harassment. Although it appears that the occurrence was a result of an oversight rather than due to any intentional act, the result was the same; the jury received "other evidence" not introduced during trial which the appellant was unable to object to or impeach. Considering the fact that the appellant consistently contended that the complainant did not want to prosecute because the defense had discovered her alleged sexual affliction rather than because of media harassment, the proper introduction of this affidavit during trial would have provided the defense with still another valid reason to introduce the excluded evidence for the purpose of impeaching the statements in the affidavit. In *Burkhalter v. State*, 493 S.W.2d 214 (Tex.Crim.App.1973), the court emphasized the value of the right to impeach a critical witness stating:

> The point is that *the jury should have been given the opportunity to judge [the state's critical witness's] credibility for themselves....* (Emphasis in original.)
>
> \* \* \* \* \* \*
>
> As recognized in *Napue, the jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence.* (Emphasis added.)
>
> \* \* \* \* \* \*
>
> As previously stated, [because the witness was critical to establish an element of the state's case] *it is of no consequence that the falsehood bore upon the witness' credibility rather than directly upon appellant's guilt.* (Emphasis added.)
>
> \* \* \* \* \* \*
>
> Due process, perhaps the most fundamental concept in our law, embodies principles of fairness rather than an immutable line drawing as to every aspect of a criminal trial....

*Id.* at 218–219 (citations omitted), citing, *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959).

In a case such as this, the complainant is the most critical witness for the State, and the most critical issue is consent which depends entirely upon the credibility of the complainant. This case involves a complainant testifying under a court threat of contempt, who, allegedly, had the afflictions described by the evidence in the bill of exceptions, which remained unknown to the jury. Further, the State depended con-

siderably for substantiation on the testimony of an adult witness who admitted drinking two cases of beer prior to the incident, which, he admitted, affected his ability to determine what was real and what was not, and who described his mental condition as one where his "chain jumped."

The State also relied on the testimony of a twelve (12) year old who was on probation on the night in question; a fact which the court prevented the appellant from using in cross-examination, but which is not a point of error before this court. Nevertheless, this is hardly a case that the State can claim is "overwhelming." Considering all the foregoing, this "other evidence" improperly received by the jury added "detrimentally to the defense." *Garza*, 630 S.W.2d at 276. The dissent rejects appellant's complaint, surmising that the prejudicial remarks of the jury were mere jokes. We are unconvinced that this makes the "other evidence" improperly received less improper, or less "detrimental to the defense." *Garza*, 630 S.W.2d at 276. Further, we cannot conclude beyond a reasonable doubt that the error made no contribution to the conviction. TEX.R.APP.P. 81(b)(2). Because this case must be reversed and remanded, we find no need to address the other points of error.

A trial is a search for the truth. Although an accused is not entitled to a perfect trial, he is entitled to a fair one. This appellant may be guilty as charged, but he was assured, by both the United States and Texas Constitutions, a right to effectively present his sole defense through relevant and admissible evidence and by meaningful confrontation. Further, in order to have a fair trial, the jury should have rendered its verdict based solely on the evidence properly admitted during trial, without considering other detrimental evidence which was not properly introduced. The Supreme Court of the United States addressed this issue more eloquently in *Brady*, stating that "Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly." *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

The judgment is reversed and the cause is remanded.

PEEPLES, Justice, dissenting.

In this gang-rape case, a jury convicted appellant of aggravated kidnapping and assessed punishment at thirty years' confinement and a $6000 fine. The aggravating factor was the intent to commit sexual abuse. The majority reverses and holds (1) that evidence of the complainant's sexual conduct eight months after the event should have been admitted, and (2) that the court should have granted a new trial because the jury heard additional information about appellant during its deliberations. I dissent from those holdings.

The state's evidence showed that on the night of March 26, 1988, the complainant was walking from a family party to her nearby home when four men, including appellant, approached her in a car. They asked her to go riding, but she declined. Two of them then got out of the car and forced her into the back seat. They then took her to a ranch where cockfights were taking place. There she was raped and otherwise sexually abused in and on the car by a number of men, including appellant. There was testimony that in addition to raping her, appellant held a flashlight on her while others raped her and also forced a beer bottle into her vagina. Appellant and the others who had originally brought the complainant to the ranch left her there and drove away. The complainant was then taken to a second car by other men at the ranch, where the sexual abuse continued.

According to appellant, the complainant accompanied the men and participated in the conduct willingly. The defense offered testimony from a number of men who were present at the ranch that the complainant consented to the activity and enjoyed it. Another defense witness testified that she saw the complainant get into a car on the night in question and that she did not see anyone use force.

Toward the end of the trial, outside the jury's presence, appellant offered a bill of

exceptions regarding the complainant's sexual activity eight months *after* the alleged kidnapping. The pertinent events took place in the following sequence:

- alleged kidnapping: March 1988
- indictment: April 1988
- extraneous sexual conduct (excluded by court): November 1988
- trial: January 1989

Appellant offered the testimony of four witnesses who stated that they had observed or had participated in sexual encounters between the complainant and multiple men in November, 1988, which she initiated and enjoyed. The court had previously granted the state's motion in limine seeking to exclude evidence of subsequent sexual conduct, and the court sustained the state's objections.

In the jury's presence, a psychiatrist testified for the defense about the medical condition of nymphomania. Appellant was allowed to ask a hypothetical question based on his version of the events on the night in question—specifically that the complainant consented to having sex with multiple partners while in close proximity to other people—and the psychiatrist agreed that such activities displayed characteristics of nymphomania. When appellant sought to ask additional hypothetical questions based on his previously offered bill of exceptions regarding subsequent sexual activity, he was allowed to do so only outside the hearing of the jury. In chambers, the doctor stated that the hypotheticals were consistent with nymphomania and that it was possible, but improbable, that a person with this condition could refuse consent and be raped. The court sustained the state's objections to the hypotheticals.

## I. SUBSEQUENT SEXUAL CONDUCT OF THE COMPLAINANT.

The majority sustains appellant's first point of error, which contends that the court erred in denying him the right to present evidence or cross-examine the complainant about events of consensual group sexual conduct that occurred after the event in question. Appellant offered the testimony for the purpose of proving (1) that the complainant had *consented* on the occasion in question, and (2) that she had a *motive to lie* in the instant case because she wanted to hide her involvement in group sex from her husband and family. The majority holds that appellant had a Sixth Amendment right to offer the excluded evidence for each of these purposes.

Appellant's first theory was that the evidence of consensual sexual relations with groups of men in November 1988 showed something about the complainant's character, the inference being that in March 1988 she had acted in conformity with her character and had consented to the episode. Character evidence often has some probative value and is considered relevant, and that is true of the excluded evidence in this case. But the rules of evidence set limits on the circumstances under which character can be proved.[1] The record supports three possible theories of admissibility:[2] (1) that the evidence was admissible on the issue of consent under evidence rules 404 and 405; (2) that appellant was entitled

---

1. Evidence that is "relevant" can be inadmissible if its probative value is substantially outweighed by its prejudicial effect, and the rules of evidence have made a conscious decision to give the trial court considerable discretion in assessing the balance. *See Montgomery v. State,* —— S.W.2d ——, ——, slip op., at 2–11 (Tex. Crim.App. May 30, 1990, Nos. 1090–88 and 1091–88).

2. The trial court stated that TEX.R.CRIM.EVID. 412—the rape shield rule concerning evidence of sexual conduct of complainants in sexual assault cases—did not apply. The state challenges that decision, but the court was correct on this point. Rule 412 applies to "previous sexual conduct" and "past sexual behavior." The evidence offered in the present case concerned *subsequent* sexual behavior. Moreover, by its express terms the rule applies to prosecutions for sexual assault, aggravated sexual assault, and attempts to commit those offenses. Appellant was on trial for aggravated kidnapping, in which the aggravating factor was the intent to commit sexual assault. Even though the tendered evidence certainly comes within the spirit of rule 412, I agree that the rule by its express terms does not apply to evidence of subsequent sexual conduct in an aggravated kidnapping case, and that the court's exclusion of the evidence cannot be upheld on rule 412's authority.

under evidence rule 608 to impeach the complainant's credibility by establishing a motive to lie; and (3) that apart from the evidence rules, he had a constitutional right to cross-examine about the extraneous sexual conduct. The rules of evidence have displaced prior Texas case law on this point.[3]

### 1. Consent.

Under rules 404 and 405[4] the evidence was not admissible to prove consent. Rule 404 deals with the *admissibility* of character evidence. Rule 405 deals with *how* character may be proved if it is admissible under rule 404. Rule 405 sets out different principles for the proof of character by *reputation or opinion*, and proof of char-

acter by *specific instances of conduct*. The advisory committee's note to federal rule 405, from which the Texas rule was taken, states the reasons for this distinction:

Of the three methods of proving character provided by the rule, evidence of specific instances of conduct is the most convincing. At the same time it possesses the greatest capacity to arouse prejudice, to confuse, to surprise, and to consume time. Consequently the rule confines the use of evidence of this kind to cases in which character is, in the strict sense, in issue and hence deserving of a searching inquiry. When character is used circumstantially and hence occupies a lesser status in the case, proof may be

---

**3.** Before the 1975 rape shield law was enacted, the court of criminal appeals allowed introduction of evidence of the complainant's reputation and specific acts with the defendant and other men.

> When the consent of a prosecutrix becomes an issue in a rape case, her reputation for unchastity may be shown as well as specific acts of unchastity between the prosecutrix and others are generally admissible.

*Burton v. State,* 471 S.W.2d 817, 821 (Tex.Crim. App.1971). In 1975 the penal code was amended to allow such evidence only after a balancing decision by the trial court. *See* TEX.PEN.CODE § 21.13, renumbered as § 22.065 in 1983, repealed by Texas Rules of Criminal Evidence, eff. Sept. 1, 1986. *See Allen v. State,* 700 S.W.2d 924 (Tex.Crim.App.1985) (applying § 22.065 and upholding exclusion of evidence of victim's extraneous sexual conduct).

**4.** **Rule 404. Character Evidence not Admissible to Prove Conduct; Exceptions; Other Crimes**

(a) **Character Evidence Generally.** Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

(1) *Character of Accused.* Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same;

(2) *Character of Victim.* Subject to Rule 412, evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of peaceable character of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor;

(3) *Character of Witness.* Evidence of the character of a witness, as provided in Rules 607, 608 and 609.

(b) **Other Crimes, Wrongs, or Acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided, upon timely request by the accused, reasonable notice is given in advance of trial of intent to introduce the State's case in chief such evidence other than that arising in the same transaction.

(c) **Character Relevant to Punishment.** In the penalty phase, evidence may be offered by an accused or by the prosecution as to the prior criminal record of the accused. Other evidence of his character may be offered by an accused or by the prosecution. Nothing herein shall limit provisions of Article 37.071, *Code of Criminal Procedure.*

**Rule 405. Methods of Proving Character**

(a) **Reputation or Opinion.** In all cases in which evidence of character or trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. Provided however that in order to be competent to testify concerning the character or trait of character of the accused, a witness must, prior to the date of the offense, have been substantially familiar with the reputation of the accused. In all cases where testimony is admitted under this rule, on cross-examination inquiry is allowable into relevant specific instances of conduct.

(b) **Specific Instances of Conduct.** In cases in which character or trait of character of a person is an essential element of a charge, claim or defense, proof may also be made of specific instances of his conduct.

only by reputation and opinion. These latter methods are also available when character is in issue.

Appellant's tendered evidence consisted almost entirely of testimony from several young men about events of group sex with the complainant in November 1988, eight months after the event for which appellant was tried and convicted. While the witnesses alluded to her reputation as one who liked and invited sex with multiple partners, there is no indication that this reputation existed at any time other than November 1988. Appellant did not make a limited offer of the reputation evidence; he offered the specific instances of conduct generally. His point of error one complains only of the exclusion of evidence of the "subsequent acts of the alleged victim" and he has not contended that he offered reputation evidence. If appellant had offered evidence of the complainant's *reputation* for nymphomania *in March 1988,* this case would present a different question.

But under rule 404(b) appellant had no right to introduce specific evidence of other acts—as distinguished from reputation or opinion evidence—to prove complainant's character "in order to show that [she] acted in conformity therewith." That is the clear command of rule 404(b). In other words appellant was not entitled to show complainant's other acts of consensual sexual involvement in order to show that she consented to the episode—that is, "acted in conformity" with those prior acts.

Nor was the evidence of specific acts admissible under rule 405(b), which makes specific instances of conduct inadmissible unless the character of the person is an essential element of the charge or the defense. The complainant's *character* was not an element of the case against appellant or his defense. Her consent was an issue but her character was not. Rule 405 does not say that specific instances of conduct may be introduced if one's character is *relevant to* an element of the charge or defense; it says the person's character must itself *be* an "essential element."

Under the now-repealed criminal offense of seduction, unchastity of the victim was a defense and therefore was provable. *See* 2 R. RAY, TEXAS PRACTICE, LAW OF EVIDENCE, §§ 1506–1507 (1980). But that is not true of rape or, in this case, aggravated kidnapping. The complainant's character simply was not an element of anyone's case in chief. Certainly nothing was said in the court's charge about her character being an element that either side had to prove.

For all these reasons, the evidence of specific acts of sexual conduct was not admissible under rules 404 and 405 to prove consent.

### 2. Motive.

Appellant did not offer the evidence *to prove motive* as part of his defense but *to undermine the complainant's credibility* by showing that she had a motive to lie. In other words he offered it not to prove motive as an issue in the case but to impeach complainant. Her motive was not an issue that he could have proved except as it undermined her credibility. Even if motive had been a provable issue in the case apart from impeachment, the excluded evidence (November 1988) simply does not purport to establish that the complainant somehow had a motive to engage in consensual sex on the night in question (March 1988). For this reason the evidence was not admissible under rule 404, which states that evidence of other crimes, wrongs, or acts may be admissible *to prove motive.*

Nor was the evidence admissible for *impeachment* concerning motive. Rule 608(b) strictly limits the use of specific instances of conduct to attack a witness's credibility:

Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be inquired into on cross-examination of the witness nor proved by extrinsic evidence.

The tendered evidence of specific acts was not admissible or subject to use in cross-examination.

### 3. Constitutional right to cross-examine.

The majority cites *Olden v. Kentucky*, 488 U.S. 227, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988), in support of its conclusion that the trial court violated appellant's Sixth Amendment right to cross-examine the complainant about other acts of consensual group sex to show somehow that she had a motive to lie. The majority does not even begin to explain how the complainant's conduct in November of 1988 sheds light on her motive to fabricate a rape charge eight months earlier in March (or when appellant was indicted in April 1988).

*Olden* deals with cross-examination about motive to lie; it certainly does not establish a general right to prove extraneous sexual conduct in rape cases or other cases, such as kidnapping, in which consent may be an issue. In *Olden* the complainant testified that Olden and Harris raped her; the defendants testified that she consented. On the occasion in question, her boyfriend, a black man named Russell, saw her alight from Olden's car after the event, and he testified at trial. Olden contended that the complainant accused him of rape in order to allay Russell's suspicion that she had been unfaithful, which was aroused when he saw her get out of the defendants' car. Olden argued that she accused him of rape to protect her relationship with Russell, and that he should be able to cross-examine about their relationship. As the Court said, "[Olden's] theory of the case was that Matthews [the complainant] concocted the rape story to protect her relationship with Russell, who would have grown suspicious upon seeing her disembark from Harris's car." 488 U.S. at 230, 109 S.Ct. at 482, 102 L.Ed.2d at 518. The complainant had testified that she was living with her mother, but Olden's tendered proof showed that she was living with Russell.

The trial court prevented the *Olden* defendants from cross-examining on this question because of the danger of injecting racial prejudice into the case; the complainant was white and Russell was black. The Supreme Court held that the defendants were entitled to show the true relationship of the complainant and Russell.

The majority ignores the distinctions between the goals of the cross-examination in *Olden* and appellant's goals in the present case. There the prosecutrix had a motive for fabricating the rape charges in the first place: her boy friend saw her leave the alleged rapists' car. And the defendant did not seek to cross-examine about other sexual conduct, but to prove the existence of the relationship with the boy friend. In the present case, appellant seeks to cross-examine about *subsequent sexual conduct*, and I fail to see how sexual conduct in November 1988 could provide a motive to fabricate charges that resulted in an indictment on April 21, 1988, seven months earlier. In contrast to *Olden*, there is no indication that the complainant's husband had seen her with appellant. If the complainant had wanted to hide the March 21 event from her husband, she would have kept the matter quiet instead of reporting it to the police.

Surely the majority does not mean to hold that *Olden* entitles a defendant to cross-examine on prejudicial matters simply by labeling the inquiry "motive." On the contrary, the *Olden* Court stressed and reaffirmed its statement in an earlier case that trial courts may take into account and balance factors similar to those contained in TEX.R.CRIM.EVID. 403:

> While a trial court may, of course, impose reasonable limits on defense counsel's inquiry into the potential bias of a prosecution witness, to take account of such factors as "harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that [would be] repetitive or only marginally relevant," ... the limitation here was beyond reason. Speculation as to the effect of jurors' racial biases cannot justify exclusion of cross-examination with *such strong potential to demonstrate the falsity of [the complainant's] testimony.*

*Olden*, 488 U.S. at 232, 109 S.Ct. at 483, 102 L.Ed.2d at 520 (emphasis added). In other words, the Court affirmed the trial court's discretion to balance prejudice

against probative value but concluded that the trial court's balancing was "beyond reason"—the prejudice (possible racial bias of the jury) did not outweigh the probative value (a strong suggestion that the story was invented to allay the suspicions of the boyfriend who saw her with the alleged rapists). In the present case the prejudice is great and the probative value on motive to fabricate retroactively is difficult to comprehend.

I certainly agree that a defendant has a right to cross-examine about a witness's involvement with the legal system that might give him a motive to alter his testimony. *See e.g., Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) (state had dismissed public drunkenness charge in return for witness's talking with prosecutor); *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) (witness was on juvenile probation when he identified defendant and therefore had arguable motive to divert suspicion from himself and to avoid possible revocation of probation); *Steve v. State,* 614 S.W.2d 137 (Tex.Crim.App.1981); *Evans v. State,* 519 S.W.2d 868 (Tex.Crim.App.1975). And when there is a motive to fabricate the charges at the outset, as in *Olden,* the defendant must be allowed to cross-examine on that issue.

But the majority opinion goes much further and allows inquiry about extraneous sexual conduct in virtually all rape and sexual assault cases, because the defendant can always allege that the complainant has a "motive" to hide the "true" fact that she initiated the sexual encounter and was not really raped. The majority says, "The appellant was prevented from presenting the only defense [consent] he had." In other words, a defendant who says the complainant consented has a constitutional right to cross-examine about other sexual conduct. Because the majority relies on constitutional principles, it has in effect held that rule 412, the rape shield rule, can probably never be applied in the face of a rape defendant's assertion that the complainant consented and is alleging rape in order to protect her reputation.

Significantly, the court of criminal appeals upheld the previous rape shield law's constitutionality on its face and as applied in *Allen v. State,* 700 S.W.2d 924, 928–32 (Tex.Crim.App.1985). I do not agree that *Olden* undermines *Allen.*

The evidence was not admissible under the rules of evidence and was not required by the United States Constitution. I would hold that the trial court did not abuse its discretion in excluding it. I reiterate that appellant offered evidence of specific acts eight months after the offense, not reputation prior to the event.

## II.  JURY MISCONDUCT

The majority also holds that appellant was entitled to a new trial because of jury misconduct. At the hearing on the motion, he presented the affidavits and live testimony of two jurors. This evidence showed that, during a recess in deliberations, one member of the jury told the others that appellant had escaped from jail, gotten his wife pregnant, and returned to jail. Apparently the other jurors laughed about this and considered it a joke. The comment was made during a break in deliberations and was not discussed further after one juror admonished the others not to talk about it. The evidence also shows that one juror informed the others that appellant was on parole.

Rule 30 of the rules of appellate procedure provides that an accused is entitled to a new trial "[w]here after retiring to deliberate the jury has received other evidence...." TEX.R.APP.P. 30(b)(7) (formerly TEX.CODE CRIM.PROC.ANN. art. 40.03(7) (Vernon 1979)). In order to mandate a new trial under this rule, however, appellant must show that (1) "other testimony" or "other evidence" was actually received by the jury, and (2) such evidence was detrimental to him. *Bennett v. State,* 742 S.W.2d 664, 676 (Tex.Crim.App.1987); *vacated,* 486 U.S. 1051, 108 S.Ct. 2815, 100 L.Ed.2d 917 (1988), *affirmed,* 766 S.W.2d 227 (1989), *cert. denied,* —— U.S. ——, 109

S.Ct. 3229, 106 L.Ed.2d 578 (1989);[5] *Garza v. State*, 630 S.W.2d 272, 274 (Tex.Crim. App.1981). Passing remarks of jurors do not necessarily constitute the receipt of "other evidence," especially where they are not further discussed after an admonishment not to talk about them. *Stephenson v. State*, 571 S.W.2d 174, 176 (Tex.Crim. App.1978); *Baldonado v. State*, 745 S.W.2d 491, 495 (Tex.App.—Corpus Christi 1988, pet. ref'd); *Kashfi v. State*, 703 S.W.2d 312, 314 (Tex.App.—Waco 1985, pet. ref'd).

The majority assumes, without discussion, that the jury received other evidence within the meaning of the new-trial rule. I disagree. The comments concerning appellant's purported escape and his wife's pregnancy were made during a recess, were generally regarded as a joke, and were not mentioned again by the jurors after one of them told the others to quit talking about it. The statements, while improper, were made casually and incidentally during a break in deliberations and did not require the granting of a new trial. *See Nacol v. State*, 590 S.W.2d 481, 486 (Tex.Crim.App. 1979) (mere mention of defendant's failure to testify, without discussion, did not require new trial); *Carrillo v. State*, 566 S.W.2d 902, 915 (Tex.Crim.App.1978) (according to jurors, "the discussion of the information was brief, was of no significance, and did not affect their decision"); *Aguirre v. State*, 683 S.W.2d 502, 515 (Tex. App.—San Antonio 1984, pet. ref'd) (incidental comment that juror had heard defendant's brother shot deceased); *Rodriguez v. State*, 661 S.W.2d 332, 336 (Tex.App.— Corpus Christi 1983, pet. ref'd) (comment that defendant came from mean, violent family). Significantly, no juror gave information that appellant was guilty in this case and the matters were not mentioned repeatedly. *See, e.g., Stephenson v. State*, 571 S.W.2d at 176 (juror said she knew the facts personally and that defendant was guilty); *Garza v. State*, 630 S.W.2d 272 (on two or three occasions statements were made and discussed that appellant "had a

bad criminal record, that he had killed a man, was a murderer, should be put away, and should be locked up").

The statement that appellant was on parole also appears to have been a passing remark rather than the subject of discussion. These statements do not constitute the receipt of other, detrimental evidence as that term is used in appellate rule 30(b)(7).

The majority also states that the jury received other evidence because it was allowed to take exhibit one (the complainant's affidavit expressing her desire to dismiss the case, which was not admitted into evidence) into the jury room. The exhibit was one of over sixty exhibits viewed by the jury during the guilt-innocence phase. Appellant has not made any showing that this exhibit was, in fact, considered (or "received") by the jury. Further, it is apparent from a reading of the affidavit that it was not detrimental to appellant. In considering whether the exhibit was "detrimental" to appellant, the controlling factor is the character of the evidence in light of the issues before the jury. *Garza v. State*, 630 S.W.2d at 274–76. The affidavit merely stated that the complainant no longer wanted to testify because she felt harassed by the media. I do not see how this could have affected the jury's decision on the issues in the case. The mere presence of this exhibit in the jury room did not entitle appellant to a new trial.

For the foregoing reasons, I dissent from the majority's opinion reversing and ordering a new trial.

BUTTS, Justice, dissenting.

I respectfully dissent. The original opinion (*see* J. Peeples' dissent) correctly decided this appeal.

The conviction in this case is for aggravated kidnapping (not sexual assault). The statute provides, as relevant to the present case:

---

**5.** The subsequent history opinions concerned evidence of future dangerousness at the penalty phase of a capital murder case and have no effect on the proposition for which I cite *Bennett*.

(a) A person commits an offense if he intentionally or knowingly abducts another person with the intent to:

(4) ... violate or abuse him sexually.

(b) An offense under this section is a felony of the first degree unless the actor voluntarily releases the victim alive and in a safe place, in which event it is a felony of the second degree.

TEX.PENAL CODE ANN. § 20.04 (Vernon 1989). The elements of aggravated kidnapping, as relevant to the instant case, are that a person:

(1) intentionally or knowingly

(2) abducts

(3) another person

(4) with the intent to violate or abuse the person sexually.

*Phillips v. State*, 597 S.W.2d 929, 932 (Tex. Crim.App.1980). Further, the kidnapping statutes define "abduct:"

In this chapter:

\* \* \* \* \* \*

(2) 'Abduct' means to restrain a person with intent to prevent his liberation by:

(A) secreting or holding him in a place where he is not likely to be found; ...

TEX.PENAL CODE ANN. § 20.01 (Vernon 1989). The indictment in this case alleges, in pertinent part, that appellant did

... knowingly and intentionally abduct [complainant], without her consent, with intent to prevent her liberation, by secreting and holding her in a place where she was not likely to be found, namely: on a dirt road approximately 3/10 mile west of Intersection with Mendietta Road, the entrance to said dirt road being approximately 1/10 mile South of Intersection of El Toro Road and Mendietta Road, and with intent to violate and abuse the said [complainant] sexually.

The ultimate issue in any aggravated kidnapping case is *abduction with the requisite specific intent, not whether sexual acts were committed or overtures made. Phillips v. State*, 597 S.W.2d at 936. One's acts are generally reliable circumstantial evidence of his intent. *Id.* However, they are not the only means of proof. Intent could as easily be shown by words, for example, "I am going to abduct and rape you." *Strictly construing the statute, an abduction with these accompanying words would be a completed aggravated kidnapping. If the abductor did not subsequently rape his captive, this would be relevant in evaluating the sufficiency of proof of intent. However, it would not preclude submitting the issue of aggravated kidnapping to the jury.... [T]he statute does not rely on acts, but intent, and acts can be probative evidence of such intent. Id.* (all emphasis supplied) Thus, the aggravating factor was " 'with the intent to violate or abuse [complainant] sexually.' "

The majority inappropriately focuses upon the complainant's consent to sexual intercourse. That is not the consent with which the factfinder must concern itself in a kidnapping case. The "without consent" requisite contained in "abduct", which is an essential element of aggravated kidnapping, is altogether different. The "without consent" element in kidnapping is proved when the *restraint*, and not sexual intercourse, is accomplished by force. The complainant testified that she was forcibly pulled into the car after declining to join the men inside. She was not permitted to leave. She was taken without her consent to the isolated rural location. Thus, if the factfinder believed this witness, as it did, abduction had been proved. In addition, it must be proved to the factfinder beyond a reasonable doubt that at the time of the abduction, appellant had the specific intent to violate or abuse the complainant sexually. The aggravating circumstance which raises the level of culpability in this case is the specific intent at the time of the abduction. Premising its reasoning on the complainant's alleged consent to sexual intercourse, the majority erroneously ignores the requirements of the aggravated kidnapping statute. The required element of *want of consent* modifies abduction, which had already been established. It was not whether she consented to sexual intercourse once she was secreted at the rural location.

The complainant testified she was taken against her will to the isolated location ("abducted without consent") where clandestine cockfights were conducted. Immediately several men, including appellant, began committing sexual abuses upon complainant. It would not be necessary that appellant actually have sexual intercourse with the complainant. The essential elements of "abduct" and "the intent to violate or abuse her sexually" were proved to the satisfaction of the jury, which had been instructed on the elements of the offense of aggravated kidnapping ... not aggravated rape.

The *en banc* opinion would improperly allow specific unrelated acts of misconduct of the complainant *subsequent* to this offense to be shown to the jury. The original opinion (now J. Peeples' dissent) correctly decides this point and notes that the rules of evidence do not permit such evidence. This would serve only to mislead and confuse the factfinder.

The original opinion (now J. Peeples' dissent) properly sets out the law in this case. The question whether an allegedly unchaste female can be the subject of aggravated kidnapping requires an affirmative answer. The *en banc* opinion should be reversed. For these reasons, I respectfully dissent.